UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

LUIS AVILA RUEDA,

                          Plaintiff,

               v.

A & G IRON WORKS CORP, and ALI
ELGERUSHI, *individually*,

                         Defendants.

-----------------------------------------------------------------

**<u>MEMORANDUM & ORDER</u>**
1:25-CV-1791 (MKB)

MARGO K. BRODIE, United States District Judge:

       Plaintiff Luis Avila Rueda commenced this action on April 1, 2025, against Defendants A &

G Iron Works Corp. ("A & G") and Ali Elgerushi.  (Compl., Docket Entry No. 1.)  Plaintiff alleges

that Defendants violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA") and the

New York Labor Law, N.Y. Lab. Law §§ 2, 190 *et seq*., and 650 *et seq*. ("NYLL"), by failing to (1)

pay him straight time compensation for hours worked, (2) pay him overtime compensation for hours

worked in excess of forty per week, (3) provide statutorily required wage notices and weekly wage

statements, (4) maintain accurate time and pay records, and (5) retaliating against him for

complaining about these violations by terminating his employment. (*Id.* ¶¶ 35–82.)

       Defendants have not appeared or responded to the Complaint despite proper service.[1]  On

---

[1]  Plaintiff caused A & G to be served through the New York Secretary of State on May 8,
2025, (Aff. of Service of A & G ("Aff. of Service of A & G"), Docket Entry No. 6, and annexed to
Decl. in Supp. of Pl.'s Mot. for Default J. as Ex. C, Docket Entry No. 19-3), and served Elgerushi
on May 20, 2025 by affixing a copy of the summons and Complaint to the door of his usual place of
abode in Staten Island, New York 10309, and on May 22, 2025, by mailing another copy to the
same address, (Aff. of Service of Elgerushi ("Aff. of Service of Elgerushi"), annexed to Decl. in
Supp. of Pl.'s Mot. for Default J. as Ex. B, Docket Entry No. 19-2).  On July 2, 2025, at the
direction of Magistrate Judge Marica M. Henry, Plaintiff served the summons, Complaint, a copy of

October 9, 2025, Plaintiff moved for default judgment[2] against Defendants pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure.[3]  (Pl.'s Mot.)  For the reasons set forth below, the Court grants the Plaintiff's motion for default judgment.

## I.  Background

Plaintiff, a resident of New York, is a former employee of A & G.[4]  (Compl. ¶¶ 4–5, 10.)  A

---

the July 1, 2025 minute entry and order, and a copy of the docket report to both A & G and Elgerushi. (Aff. of Service of Summons, Compl., Min. Entry & Order, and Docket Sheet of A & G and Elgerushi ("Aff. of Service of Docket"), Docket Entry No. 12; *see* Min. Entry & Order dated July 1, 2025, Docket Entry No. 11.)

[2]  (Notice of Mot. for Default J. ("Pl.'s Mot."), Docket Entry No. 18; Decl. of Clifford R. Tucker in Supp. of Pl.'s Mot. for Default J. ("Tucker Decl."), Docket Entry No. 19; Pl.'s Mem. in Supp. of Pl.'s Mot. ("Pl.'s Mem."), Docket Entry No. 20; Aff. of Service of Mot. for Default J. ("Aff. of Service for Pl.'s Mot."), Docket Entry No. 21.)

[3]  Plaintiff first requested certificates of default on July 30, 2025.  (Req. for Certificate of Default dated July 30, 2025, Docket Entry No. 13.)  The Clerk denied that request for failure to include certificates of service.  (Order dated Aug. 4, 2025.)  Plaintiff requested for a second time on August 5, 2025, (Req. for Certificate of Default dated Aug. 5, 2025, Docket Entry No. 14), which the Clerk granted, entering default against both Defendants on August 6, 2025, (Certificates of Default, Docket Entry No. 15).  The Court granted Plaintiff two extensions of time to move for default judgment, ultimately with an October 9, 2025 deadline.  (Mots. for Ext. of Time, Docket Nos. 16–17; Order dated Aug. 19, 2025; Order dated Sep. 24, 2025.)  On October 9, 2025, Plaintiff filed the Notice of Motion for Default Judgment, (Pl.'s Mot.), the Declaration of Clifford R. Tucker with exhibits (A–H), (Tucker Decl.), and the Memorandum of Law in Support of the Motion, (Pl.'s Mem.).  The supporting exhibits include the Complaint, affidavits of service, Plaintiff's declaration, certificates of default, damages chart, attorneys' fees records, and proposed judgment.  (Tucker Decl.; Proposed J., annexed to Tucker Decl. as Ex. H., Docket Entry No. 19-8.)  On October 10, 2025, Plaintiff served Defendants with the motion papers by first-class mail to A & G's business addresses (1818 McDonald Avenue and 2304 McDonald Avenue, Brooklyn, New York 11223) and to Elgerushi's residence (in Staten Island, New York 10309).  (Aff. of Service for Pl.'s Mot.)

[4]  The Court assumes the truth of the factual allegations in the Complaint for purposes of this Memorandum and Order.  *See Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 188 (2d Cir. 2015) (per curiam) (noting that courts must accept allegations in the complaint as true "in deciding whether a default judgment is appropriate").  "Where there are discrepancies between factual allegations in the . . . [c]omplaint and the signed declarations . . . of [p]laintiffs, [the Court may] rel[y] on the facts in the . . . declarations to resolve liability and calculate damages."  *Cao v. Wedding in Paris LLC*, 727 F. Supp. 239, 256 n. 4 (E.D.N.Y. 2024); *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 29 (E.D.N.Y.

& G is a New York corporation engaged in metal fabrication and construction, with its principal place of business at 2304 McDonald Avenue, Brooklyn, NY 11223, and its principal executive office 1818 McDonald Avenue, Brooklyn, New York 11223. (*Id.* ¶¶ 7, 9.) Elgerushi is the chief executive officer of A & G. (*Id.* ¶ 8.) Plaintiff alleges that A & G and Elgerushi "exercised control over [his] terms and conditions of employment." (*Id.* ¶¶ 10, 13.) Plaintiff further alleges that both A & G and Elgerushi "had and exercised the power and authority to . . . hire and fire," "determine rate and method of pay," "supervise," "determine work schedules," "maintain payroll records," "and otherwise affect the quality of Plaintiff's employment." (*Id.*) Plaintiff also alleges that A & G and Elgerushi delegated these powers to managers and supervisors who acted on their behalf in managing employees' work and pay. (*Id.*)

A & G employed Plaintiff from approximately February of 2023 through May 7, 2024 as a solderer. (*Id.* ¶¶ 6, 15, 16, 20.) Elgerushi hired Plaintiff and served as his direct superior and supervisor. (*Id.* ¶¶ 17–18.) During his employment, Elgerushi was responsible for paying Plaintiff's wages. (*Id.* ¶ 19.) Plaintiff worked six days per week and approximately ten hours per day, for a total of about sixty hours per week. (*Id.* ¶ 22.) Plaintiff received a fixed weekly salary of approximately $1,000, and his pay did not vary based on the number of hours he worked. (*Id.* ¶ 21.) Plaintiff alleges that throughout his employment, Defendants did not pay him at one and a half times his regular rate of pay for all hours worked beyond forty hours in a single week. (*Id.* ¶ 23.) On or about April 29, 2024, Plaintiff requested payment for three weeks of work that he claims were unpaid. (*Id.* ¶ 24.) On May 5, 2025, Elgerushi terminated Plaintiff's employment. (*Id.* ¶ 25.)

---

2015) ("A court may rely on 'detailed affidavits and documentary evidence,' in addition to the plaintiff's complaint, to determine the sufficiency of a default judgment claim." (citation omitted)). "Plaintiffs' affidavits and declarations are 'presumed to be correct in the absence of any rebuttal evidence proffered by [d]efendants.'" *Cao*, 727 F. Supp. 3d at 256 n. 4 (quoting *Duro v. BZR Piping & Heating Inc.*, No. 10-CV-879, 2011 WL 710449, at *3 (E.D.N.Y. Jan. 26, 2011), *report and recommendation adopted*, 2011 WL 744156 (E.D.N.Y. Feb. 22, 2011)).

During the course of Plaintiff's employment with Defendants, Plaintiff alleges that Defendants failed to provide written wage-rate notices at the time of hire or when his rate changed, did not issue weekly wage statements, and failed to maintain accurate time and pay records. (*Id.* ¶¶ 26–31.)

In the Complaint, Plaintiff asserts five causes of action: (1) failure to pay overtime in violation of FLSA § 207; (2) failure to pay all lawful wages and overtime compensation in violation of NYLL §§ 2, 650, and 651 *et seq.*; (3) failure to provide written wage notices and weekly wage statements as required by the New York Wage Theft Prevention Act ("WTPA"), NYLL §§ 195(1) and (3); (4) retaliation for engaging in protected activity and requesting unpaid wages, in violation of FLSA § 215(a)(3); and (5) retaliation for engaging in protected activity and attempting to enforce rights under the NYLL, in violation of NYLL § 215. (Compl. ¶¶ 35–82.)

Plaintiff contends that Defendants owe him damages as follows: $47,250 in unpaid minimum and overtime wages; $10,000 in statutory penalties for violations of the WTPA ($5,000 for missing wage notice and $5,000 for missing wage statements); and an equal amount of liquidated damages, totaling $104,500 exclusive of interest. (Damages Chart, annexed to Tucker Decl. as Ex. E, Docket Entry No. 19-6.) Plaintiff seeks judgment in the amount of $104,500 in damages, $4,253 in prejudgment interest, and $14,620 in attorneys' fees plus $961.56 in costs. (Proposed J.) Plaintiff's counsel's billing records reflect 36.4 hours of work and itemized disbursements for the filing fee, process service, research, and postage. (Billing Statement, annexed to Tucker Decl. as Ex. G, Docket Entry No. 19-7.)

## II. Discussion

### a. Standard of review

Pursuant to Rule 55 of the Federal Rules of Civil Procedure, there is "a 'two-step process' for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d

114, 128 (2d Cir. 2011) (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)); *see also Am. Transit Ins. Co. v. Pierre,* No. 24-CV-360, 2025 WL 863865, at *2 (E.D.N.Y. Mar. 19, 2025) (explaining that there is a "'two-step process' for the entry of judgment against a party who fails to defend" (quoting *Mickalis Pawn Shop*, 645 F.3d at 128)). "[T]he court may, on plaintiffs' motion, enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true." *Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015) (citing *Mickalis Pawn Shop*, 645 F.3d at 137); *U.S. Bank Nat'l Ass'n v. Joeefi LLC*, No. 24-CV-3966, 2025 WL 1042416, at *1 (S.D.N.Y. Apr. 8, 2025) (same); *see also Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (explaining that a district court deciding a motion for default judgment "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor" (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981))); *Trustees of the Pavers and Road Builders District Council Welfare, Pension, and Annuity Funds & the Trustees of the Local 1010 Apprenticeship, Skill Improvement, and Training Fund v. Toros Brothers Construction Corp.*, No. 24-CV-6634, 2025 WL 3265230, at *3 (E.D.N.Y. Nov. 24, 2025) (same). "A default . . . only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant." *Taizhou Zhongneng Imp. & Exp. Co. v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013); *see Wells Fargo Bank, N.A. v. Queen Tec Support Inc.*, No. 23-CV-4462, 2025 WL 939225, at *3 (E.D.N.Y. Mar. 28, 2025) (explaining that the allegations supporting a default judgment must be "sufficient to state a cause of action against the defendant" (citation omitted)); *LG Funding, LLC v. Fla. Tilt, Inc.*, No. 15-CV-631, 2015 WL 4390453, at *2 (E.D.N.Y. July 15, 2015) ("To determine whether the default judgment should issue, the [c]ourt examines whether 'the factual allegations, accepted as true, provide a proper basis for liability and relief.'" (quoting *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010))); *see also Tene v.*

5

*Neuehaus Studios Inc.*, No. 23-CV-2040, 2025 WL 2731755, at *2 (E.D.N.Y. Sep. 25, 2025) (applying the Rule 55 standard and holding that default establishes liability only where the complaint's well-pleaded allegations state a valid cause of action), *report and recommendation adopted*, Order adopting Report and Recommendations (E.D.N.Y. Oct. 10, 2025).  However, because there is "'a strong preference for resolving disputes on the merits,' and because 'a default judgment is the most severe sanction which the court may apply,' . . . a district court's discretion in [granting default judgment is] 'circumscribed,'" *Mickalis Pawn Shop*, 645 F.3d at 129 (first quoting *Green*, 420 F.3d at 104; and then quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993); and then citing *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 168 (2d Cir. 2004)), and "all doubts must be resolved in favor of the [defaulting] party."  *Green*, 420 F.3d at 104 (citing *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001)); *Hellman v. Cortland Realty Invs. LLC*, No. 22-CV-8341, 2025 WL 415388, at *2 (S.D.N.Y. Feb. 6, 2025) ("In the Second Circuit, there is a strong 'preference for resolving disputes on the merits.'"  (first quoting *Enron Oil Corp.*, 10 F.3d at 95; and then citing *Johnson v. N.Y. Univ.*, 800 F. App'x 18, 20 (2d Cir. 2020))).  "The entry of a default, while establishing liability, 'is not an admission of damages.'"  *Mickalis Pawn Shop*, 645 F.3d at 128 (quoting *Finkel*, 577 F.3d at 83 n.6).  "There must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence."  *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (first citing Fed. R. Civ. P. 55(b)(2); and then citing *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)); *see Sheet Metal Workers Loc. Union No. 46 Health Fund by Milne v. T.J.V. Mech. LLC*, No. 24-CV-06281, 2025 WL 825308, at *7 (W.D.N.Y. Mar. 17, 2025) (same); *see also Godinger Silver Art Ltd. v. Amazon Storefront HODSOF US*, No. 23-CV-7087, 2024 WL 4145724, at *2 (E.D.N.Y. Sep.

6

11, 2024) (stating there must be an evidentiary basis for damages and that the court may rely on affidavits and documentary evidence).

### b. Default judgment

Plaintiff moves for default judgment against Defendants pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure.  (Pl.'s Mot.)  Plaintiff first argues that Defendants' noncompliance, as well as failure to appear or respond despite being properly served, constitutes willful conduct.  (Pl.'s Mem. 4–5, 7.)  Second, Plaintiff argues that the well-pleaded allegations in the Complaint establish Defendants' liability under the FLSA and the NYLL, and by failing to answer, the Court should deem these "well-pleaded allegations" of liability as admitted.  (*Id.* at 4–5.)

In the Complaint, Plaintiff alleges that Defendants were his "employers" within the meaning of those statutes because they hired him, supervised his work, determined his rate and method of pay, controlled his schedule, and maintained payroll records.  (Compl.  ¶¶ 10–11, 13–14, 17–19.)  Specifically, Plaintiff contends that during his employment from approximately February 2023 through May 7, 2024, Defendants: (1) "failed to pay [him] at a rate of one and a half times his regular rate of pay for all hours worked beyond 40 in a single week"; (2) "did not give [him] wage statements with each payment of wages" as statutorily required; (3) failed to provide "a wage notice at the time of hiring or when his rates of pay changed that accurately reflected his rate or rates of pay and number of hours worked per week," and (4) "did not keep accurate records" of "Plaintiff's arrival and departure times for his work shifts" and "regular wages earned."  (*Id.* ¶¶ 23, 28–31.)  Plaintiff further alleges that he engaged in protected activity by "requesting payment for three weeks of work that were unpaid," and that Defendants "retaliated by terminating [his] employment," conduct that contravenes his statutory protections under the FLSA and NYLL, and which resulted in three weeks of unpaid wages.  (*Id.* ¶¶ 24–25; Pl.'s Mem. 3.)

### i.    Statute of limitations

Under the FLSA, claims for non-willful violations must be filed within two years and willful violations must be filed within three years.  29 U.S.C. § 255(a); *see also Perry v. City of New York*, 78 F.4th 502, 521 (2d Cir. 2023) (explaining that a jury's finding that the defendants willfully violated the FLSA extended the statute of limitations from two to three years); *Byer v. Periodontal Health Specialists of Rochester, PLLC*, No. 20-CV-1751, 2021 WL 3276725, at *1 (2d Cir. Aug. 2, 2021) ("The FLSA provides a two-year statute of limitations on actions to enforce its provisions, 'except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.'" (quoting *Parada v. Banco Indus. De Venez., C.A.*, 753 F.3d 62, 70 (2d Cir. 2014))).  To establish willfulness for purposes of the FLSA statute of limitations, a plaintiff must show that the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the Act."  *Perry*, 78 F.4th at 520 (quoting *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 366 (2d Cir. 2011)); *see also Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 324 (2d Cir. 2021) ("[I]f an employer acts unreasonably, but not recklessly, in determining its legal obligation, its action should not be considered willful." (quoting *Reich v. Waldbaum, Inc.*, 52 F.3d 35, 39 (2d Cir. 1995))); *Shu Qin Xu v. Wai Mei Ho*, 111 F. Supp. 3d 274, 280 (E.D.N.Y. 2015) (finding willfulness where the defendants did "not dispute that (1) they did not post FLSA and NYLL notices, (2) they made cash payments, and (3) they did not provide overtime pay"); *D'Arpa v. Runway Towing Corp.*, No. 12-CV-1120, 2013 WL 3010810, at *4–5 (E.D.N.Y. June 18, 2013) (finding willfulness as a matter of law based on the "[d]efendants' method of compensating nearly all of the [p]laintiffs in cash and their arbitrary issuance of W-2s [to only some employees]").

The NYLL has a six-year statute of limitations.  NYLL § 198(3) ("[A]n action to recover upon a liability imposed by this article must be commenced within six years."); *Newman v. ASA*

*Coll., Inc.*, 754 F. Supp. 3d 521, 538 (S.D.N.Y. 2024) ("The statute of limitations is six years for claims under the NYLL . . . ."); *Galindo v. Yummy Foods Deli Corp.*, No. 21-CV-45, 2024 WL 947283, at *6 (S.D.N.Y. Jan. 17, 2024) ("Under the NYLL, the statute of limitations is six years." (citing NYLL § 198(3))), *report and recommendation adopted*, 2024 WL 515245 (S.D.N.Y. Feb. 9, 2024); *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914, 2023 WL 6338666, at *5 (E.D.N.Y. Sep. 29, 2023) ("[T]he NYLL establishes a six-year limitations period for wage claims." (citation omitted)), *report and recommendation adopted*, Order adopting Report and Recommendation (E.D.N.Y. Nov. 30, 2023); *Tene*, 2025 WL 2731755, at *4 (same); *Campos Marin v. J&B 693 Corp.*, No. 19-CV-569, 2022 WL 377974, at *5 (S.D.N.Y. Jan. 21, 2022) ("Claims brought pursuant to the NYLL are subject to a six-year statute of limitations." (citing *Byer*, 2021 WL 3276725, at *2)), *report and recommendation adopted sub nom. Marin v. J&B 693 Corp.*, 2022 WL 374522 (S.D.N.Y. Feb. 7, 2022); *Leon Neri v. Abi Japanese Rest., Inc.*, No. 20-CV-581, 2021 WL 6804252, at *4 n.5 (E.D.N.Y. Nov. 29, 2021) ("The statute of limitations under the NYLL is six years and does not require a showing of willfulness." (citing NYLL § 652), *aff'd sub nom.*, *Neri v. Abi Japanese Rest., Inc.*, No. 22-227, 2023 WL 2395995 (2d Cir. Mar. 8, 2023)).[5]

---

[5] Plaintiff alleges that Defendants retaliated against him in violation of NYLL § 215 by "harass[ing] and intimidat[ing]" him and by "otherwise interfer[ing] with attempts to vindicate rights under the NYLL." (Compl. ¶¶ 77–78.) NYLL § 215(2) provides a limitations period of "two years after such violation." NYLL § 215(2)(a) ("The court shall have jurisdiction to restrain violations of this section, within two years after such violation, regardless of the dates of employment of the employee . . . ."). Courts applying § 215(2) describe the statute's limitations framework in the same terms, recognizing that NYLL retaliation claims are governed by the express limitations period set forth in § 215(2). *See Carrasco v. Metro. Transit Auth.*, No. 24-CV-4265, 2025 WL 1939052, at *5 (S.D.N.Y. July 15, 2025) (noting the "NYLL Retaliation Act's two-year statute of limitations" (citing NYLL § 215(2)). Thus, Plaintiff states a timely claim under NYLL § 215. However, Plaintiff does not request damages to compensate for Defendants alleged retaliation, only requesting damages for the unpaid weeks ahead of his termination. (Comp. ¶ 24; Pl.'s Mem. 3.) Therefore, the Court does not need to determine whether Plaintiff validly pleads this cause of action.

Plaintiff has sufficiently alleged that Defendants' FLSA violations were willful.  In support, Plaintiff alleges that Defendants paid him "a salary of approximately $1,000 per week, regardless of hours worked," required him to work approximately sixty hours per week without overtime compensation, and failed to maintain "accurate records" of his hours and wages.  (Compl. ¶¶ 21–23, 26–29.)  Plaintiff further contends that Defendants did not "keep accurate records of Plaintiff's arrival and departure times for his work shifts," did not provide "wage statements with each payment of wages," and did not give him a "wage notice at the time of hiring" as required by the NYLL, which omissions require the Court to find that Defendants acted willfully.  (*Id.* ¶¶ 28, 30–31.)  *See Perez Garcia v. Hirakegoma Inc.*, No. 17-CV-7608, 2020 WL 1130765, at *7 (S.D.N.Y. Mar. 9, 2020) (concluding that allegations that the defendant "failed to post information as required by the FLSA and the NYLL, paid [the plaintiff] in cash, did not have a time-recording system, and did not otherwise require him to record his hours" demonstrated "deliberate conduct in disregard of an employer's obligations"); *Rivera v. Harvest Bakery Inc.*, No. 13-CV-691, 2018 WL 4214337, at *7 (E.D.N.Y. Aug. 17, 2018) (noting that "[e]mployers who have paid employees in cash and erratically issued W-2s have been found to have willfully violated the FLSA" (citation omitted)), *report and recommendation adopted*, 2018 WL 4211301 (E.D.N.Y. Sep. 4, 2018); *Medina v. E. Commc'n Inc.*, No. 16-CV-869, 2018 WL 2899658, at *3 (S.D.N.Y. June 11, 2018) (concluding that the defendants' "violations of the law were willful" where they "were aware of the basic overtime rules," "failed to pay [the p]laintiff at the lawful overtime rate," failed "to provide adequate wage notices and wage statements," and failed "to provide any documentation []such as paystubs"); *cf. Alberto v. Rico Pollo #2 Rest. Corp.*, No. 18-CV-4762, 2018 WL 6813057, at *4 (E.D.N.Y. Dec. 26, 2018) ("[I]f the payments in fixed amounts of cash on a weekly basis without credit for overtime are in fact reflective of a policy and practice of defendants, it is hard to imagine a lack of willfulness.").

Because the Court finds that Defendants' violations are willful, the three-year statute of limitations applies to Plaintiff's FLSA claims.

Accordingly, Plaintiff's claims are timely with respect to any FLSA violations that occurred on or after April 1, 2022, and any NYLL violations that occurred on or after April 1, 2019, *i.e.*, three years and six years, respectively, prior to the filing of the Complaint on April 1, 2025.

### ii.    Defendants are eligible employers under the FLSA and NYLL

### 1.    Corporate Defendant

"The FLSA contains two primary worker protections: first, it guarantees covered employees a federal minimum wage; and second, it provides covered employees the right to overtime pay at a rate of one-and-a-half their regular rate for hours worked above forty hours a week." *Mei Xing Yu v. Hasaki Rest., Inc.*, 944 F.3d 395, 402 (2d Cir. 2019) (footnotes omitted).  To qualify as a covered employee, an employee must be either (1) "engaged in [interstate] commerce or in the production of goods for commerce" (individual coverage) or (2) "employed in an enterprise engaged in [interstate] commerce or in the production of goods for commerce" (enterprise coverage).  29 U.S.C. §§ 206(a), 207(a)(1); *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 86 n.2 (2d Cir. 2013); *see Marcus v. Lominy*, No. 18-CV-1857, 2022 WL 493688, at *14 (S.D.N.Y. Feb. 17, 2022) ("FLSA coverage applies 'only to employees who are (1) personally engaged in interstate commerce or in the production of goods for interstate commerce (so called "individual coverage"), or (2) employed in an enterprise engaged in interstate commerce or in the production of goods for interstate commerce (so-called "enterprise coverage").'" (quoting *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 120 (E.D.N.Y. 2011))).  The FLSA defines "[e]nterprise engaged in commerce or in the production of goods for commerce," as a business that (1) "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for

commerce by any person" and (2) has an annual gross revenue of at least $500,000. 29 U.S.C. § 203(s)(1)(A); *see Mendez v. MCSS Rest. Corp.*, 564 F. Supp. 3d 195, 205 (E.D.N.Y. 2021) (defining the conditions for enterprise coverage). As for the annual sales requirement, "virtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA." *Soto v. Miss Laser Inc.*, No. 19-CV-04745, 2023 WL 319547, at *4 (E.D.N.Y. Jan. 19, 2023) (quoting *Kantor v. Air Atl. Med., P.C.*, No. 19-CV-3597, 2021 WL 3888067, at *6 (E.D.N.Y. July 7, 2021), *report and recommendation adopted*, 2021 WL 3884193 (E.D.N.Y. Aug. 31, 2021)); *see also Quito v. Zheng*, 710 F. App'x 28, 29 (2d Cir. 2018) (noting that "annual sales exceeding $500,000 . . . is required for relief under the FLSA"). "Under the FLSA, Plaintiffs must establish that they or their employer was engaged in interstate commerce." *Maldonado v. Aangan of India LLC*, No. 20-CV-9598, 2024 WL 3910812, at *11 (S.D.N.Y. July 22, 2024) (citing *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 353 (E.D.N.Y. 2015)), *report and recommendation adopted*, 2024 WL 3887130 (S.D.N.Y. Aug. 20, 2024).[6]

Plaintiff alleges in the Complaint that A & G was "engaged in commerce or in the production of goods or commerce as defined in 29 U.S.C. § 203, 206 and 207," and "had gross annual revenues in excess of $500,000." (Compl. ¶¶ 39, 42.) However, Plaintiff does not expressly allege in the Complaint that A & G was engaged in interstate commerce or that Plaintiff handled goods that moved in interstate commerce, a required element to satisfy enterprise coverage. *See Maldonado v. Aangan of India LLC*, 2024 WL 3910812, at *11; *Marcus*, 2022 WL 493688, at *14.

---

[6] Because the Court finds that A & G qualifies as an "employer" under the FLSA and "the NYLL's definition of 'employer' is coextensive with the FLSA's definition," A & G also qualifies as Plaintiff's employer under the NYLL. *Bocon v. 419 Manhattan Ave. LLC*, No. 23-CV-3502, 2025 WL 832730, at *7 (E.D.N.Y Mar. 18, 2025) (quoting *Perry v. High Level Dev. Contracting & Sec. LLC*, No. 20-CV-2180, 2022 WL 1018791, at *7 (E.D.N.Y. Mar. 16, 2022), *report and recommendation adopted*, 2022 WL 1017753 (E.D.N.Y. Apr. 5, 2022)), *report and recommendation adopted*, Order adopting Report and Recommendation (Mar. 31, 2025)).

Regardless, courts in this Circuit have inferred enterprise coverage from the nature of the employer's business where the work necessarily involves handling materials that have moved in interstate commerce. *See Jacobs v. New York Foundling Hosp.*, 577 F.3d 93, 99 n.7 (2d Cir. 2009) (noting that the "enterprise engaged in commerce" requirement is "rarely difficult to establish" because it is met where employees handle materials that have moved in interstate commerce); *see also Huerta v. Victoria Bakery*, No. 10-CV-4754, 2012 WL 1107655, at *2 (E.D.N.Y. Mar. 30, 2012) (inferring interstate commerce connection from a bakery's use of ingredients that necessarily originated out of state); *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d at 121 (finding it "logical to infer" that janitorial supplies originated outside New York and concluding the defendants were an "enterprise engaged in commerce" under the FLSA); *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998) (explaining that even "local business activities fall within the reach of the FLSA when an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce").

Plaintiff alleges that he worked as a solderer for A & G, (Compl. ¶¶ 6, 15), assumingly working on the metal components involved in the creation of electronic products to be sold interstate to consumers or for repair as brought in by interstate customers. These allegations are sufficient to establish that A & G qualifies as an enterprise engaged in interstate commerce. *Gumaneh v. Vilano Emp. Servs., Inc.*, No. 22-CV-774, 2023 WL 5715613, at *4 (S.D.N.Y. Sep. 5, 2023) (finding that the "[p]laintiffs . . . satisfied the minimal burden by alleging that [the d]efendants 'had revenues and/or transacted business in an amount exceeding $500,000' and conducted business in interstate commerce" (citation omitted)); *Pintor v. Park King at JFK, LLC*, No. 16-CV-6269, 2018 WL 2074157, at *3 (E.D.N.Y. Feb. 21, 2018) (finding the plaintiff's allegations that the defendants "have had 'employees engaged in commerce,' handling, selling or otherwise working on goods that have been moved in or produced by commerce, and that the

volume of business exceeded $500,000" "sufficient to establish [the d]efendants' employer status" (citation omitted)).

Accordingly, the Court finds that Plaintiff sufficiently alleges FLSA enterprise coverage at this stage and A & G is a covered employer.

## 2.    Individual Defendant

The FLSA creates liability for any "employer" who violates its terms.  *See, e.g.*, 29 U.S.C. § 207(a)(1).  Under the FLSA, an "employer" is defined broadly to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d); *see also id.* § 203(a) (defining "person" as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons").  "Because the statute defines employer in such broad terms, it offers little guidance on whether a given individual is or is not an employer."  *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999); *see also Pierre v. City of New York*, No. 20-CV-5116, 2021 WL 3887912, at *6 (S.D.N.Y. Aug. 31, 2021) ("[U]ltimately, it 'offers little guidance on whether a given individual is or is not an employer.'" (quoting *Herman,* 172 F.3d at 139)).  In making that determination, a court should focus on "whether the alleged employer possessed the power to control the workers in question[], with an eye to the 'economic reality' presented by the facts of each case."  *Herman*, 172 F.3d at 139 (internal citations omitted).

Because the "economic reality" of a relationship drives the analysis as to whether it constitutes an employer-employee relationship for the purposes of the FLSA, the determination must be made on a case-by-case basis in light of the totality of the circumstances and cannot rest on "technical concepts."  *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013); *see also Sanchez Juarez v. Siderakis*, No. 23-7972, 2024 WL 5135383, at *2 (2d Cir. Dec. 17, 2024) ("[E]mployment for FLSA purposes [is] a flexible concept to be determined on a case-by-case basis by review of the

14

totality of the circumstances." (alterations in original) (quoting *Irizarry*, 722 F.3d at 104)).  In

determining whether a defendant is an "employer," as defined in the statute, the Second Circuit has

identified four factors to consider, including, "whether the alleged employer (1) had the power to

hire and fire the employees, (2) supervised and controlled employee work schedules or conditions

of employment, (3) determined the rate and method of payment, and (4) maintained employment

records."  *Irizarry*, 722 F.3d at 104–05 (quoting *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d

132, 142 (2d Cir. 2008)); *see also Ocampo v. Brown & Appel, LLC*, No. 21-2579, 2022 WL

17684587, at *2 n.2 (2d Cir. Dec. 15, 2022) (quoting same).  These factors do not, however,

"comprise a 'rigid rule for the identification of an FLSA employer,'" but rather provide a guideline

"to ensure that the economic realities test mandated by the Supreme Court is sufficiently

comprehensive and flexible to give proper effect to the broad language of the FLSA."  *Irizarry*, 722

F.3d at 105 (quoting *Barfield*, 537 F.3d at 143); *see also Sanchez Juarez v. Siderakis*, 2024 WL

5135383, at *2 ("No one of the four factors standing alone is dispositive" (quoting *Tapia v. Blch

3rd Ave LLC*, 906 F.3d 58, 61 (2d Cir. 2018))).  A district court is "also free to consider any other

factors it deems relevant to its assessment of the economic realities."  *Zheng v. Liberty Apparel Co.*,

355 F.3d 61, 71–72 (2d Cir. 2003).

Plaintiff has established that Elgerushi meets the four factors relevant to determining

whether he "possessed the power to control the workers in question," *Herman*, 172 F.3d at 139, and

has therefore shown he qualifies as an employer under the FLSA and NYLL.[7]  First, Plaintiff

alleges that Elgerushi had the power to "hire and fire" him.  (Compl. ¶ 13.)  These allegations

establish the first factor — whether the alleged employer had the power to hire and fire employees.

---

[7] Because the Court finds that Elgerushi qualifies as an "employer" under the FLSA and "the NYLL's definition of 'employer' is coextensive with the FLSA's definition," Elgerushi also qualifies as Plaintiff's employer under the NYLL.  *Bocon*, 2025 WL 832730, at *7 (quoting *Perry*, 2022 WL 1018791, at *7).

*See Rodriguez v. Lucky Lotto Grocery Deli Corp.*, No. 22-CV-2256, 2024 WL 3760583, at *9 (E.D.N.Y. July 18, 2024) (finding that the individual defendants qualified as employers under the FLSA where the plaintiff alleged, *inter alia*, that they "managed the day-to-day operations and further had the power to hire and fire employees" (alterations and internal quotation marks omitted)), *report and recommendation adopted*, 2024 WL 3759660 (E.D.N.Y. Aug. 12, 2024).

Second, Plaintiff alleges in the Complaint that Elgerushi exercised "control over Plaintiff's terms and conditions of employment" and had the "power and authority to . . . determine work schedules . . . and otherwise affect the quality of Plaintiff's employment." (Compl. ¶ 13.) These allegations are sufficient to establish the second factor — whether the alleged employer controlled employee work schedules or conditions of employment. *See Cooper v. Fire & Ice Trucking, Corp.*, No. 23-CV-1675, 2024 WL 3344001, at *7 (E.D.N.Y. July 9, 2024) (finding that "all four factors support a finding that as a matter of economic reality, the plaintiff had an employer-employee relationship with each defendant" where the plaintiff alleged, *inter alia*, that "the . . . business's owner and manager[] set [the plaintiff's] work schedule and that each of the [d]efendants controlled the conditions of [the plaintiff's] employment").

Third, Plaintiff alleges that Elgerushi had the "power and authority to . . . determine rate and method of pay." (Compl. ¶ 13.) These allegations are sufficient to establish the third factor — whether the alleged employer determined the rate and method of payment. *See Davis v. Navada's Bar & Lounge, LLC*, No. 22-CV-4176, 2024 WL 1531092, at *6 (E.D.N.Y. Mar. 1, 2024) (finding that an individual defendant qualified as an employer under the FLSA where the plaintiff alleged, *inter alia*, that he "controlled employee policies, including decisions regarding payroll, payment policy, and compensation practices"), *report and recommendation adopted*, Order adopting Report and Recommendation (E.D.N.Y. Mar. 29, 2024).

16

Finally, Plaintiff alleges that Elgerushi had the power to "maintain [sic] payroll records." (Compl. ¶ 13). These allegations are sufficient to establish the fourth factor — whether the alleged employer maintained employment records. *See Sanchez Juarez v. 156-40 Grill LLC*, No. 15-CV-5081, 2023 WL 12096468, at *12 (E.D.N.Y. Mar. 31, 2023) (finding the individual defendant who "maintained the only paperwork in this case that could be called 'employment records'" weighed in favor of finding him as an employer), *aff'd sub nom.*, *Sanchez Juarez v. Siderakis*, No. 23-7972, 2024 WL 5135383 (2d Cir. Dec. 17, 2024); *cf. Irizarry*, 722 F.3d at 116 (plaintiffs did not establish fourth factor where they offered only that the individual "worke[d] in the same office where employment records [were] kept" and "promoted the payroll director). Plaintiff's allegations are thus sufficient to establish that Elgerushi is also an "employer" covered by the FLSA and NYLL. *See Jacome v. Optical 49, Inc.*, No. 20-CV-2615, 2021 WL 3375134, at *6 (E.D.N.Y. July 9, 2021) (finding that allegations that the individual defendant "owned, operated, and controlled" the corporate defendant and "hired and fired [p]laintiff, set his working conditions, and determined how and how much [p]laintiff was paid" were sufficient to "establish that [the individual and corporate defendants] were joint employers"), *report and recommendation adopted*, 2021 WL 3373130 (E.D.N.Y. Aug. 3, 2021).

### iii.    Plaintiff sufficiently states a FLSA and NYLL unpaid wage claim

Both the FLSA and the NYLL contain provisions prohibiting employers from paying their employees a rate lower than a certain minimum hourly wage. 29 U.S.C. § 206(b); N.Y. Comp. Codes R. & Regs. tit. 12, § 141-1.3. The minimum wage under the FLSA is $7.25 an hour. 29 U.S.C. § 206(a)(1)(C); *see, e.g.*, *Paschalidis v. Airline Rest. Corp.*, No. 20-CV-2804, 2021 WL 5013734, at *4 (E.D.N.Y. Oct. 28, 2021) (applying the $7.25 federal minimum wage to the plaintiff's employment during early 2020). Under the NYLL, in 2024, the minimum wage in Kings County was $16.00 for every employer regardless of size. NYLL § 652(1-a)(a).

"Where a plaintiff brings claims under both the FLSA and the NYLL, he 'may not receive a double recovery of back wages' or liquated damages under both statutes." *Rodriguez v. New Generation Hardware Store Corp.*, No. 22-CV-4422, 2023 WL 1516908, at *2 (S.D.N.Y. Feb. 3, 2023) (internal quotation marks omitted) (quoting *Hernandez v. JRPAC Inc.*, No. 14-CV-4176, 2016 WL 3248493, at *31 (S.D.N.Y. June 9, 2016)); *see also Payamps v. M & M Convenience Deli & Grocery Corp.*, No. 16-CV-4895, 2019 WL 8381264, at *11 (E.D.N.Y. Dec. 9, 2019) ("When [p]laintiffs bring both FLSA and NYLL minimum wage claims simultaneously, . . . double recovery is prohibited."); *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 498 (S.D.N.Y. 2017) (collecting cases), *aff'd*, 752 F. App'x 33 (2d Cir. 2018). "If 'a plaintiff is entitled to damages under both federal and state wage law, the [c]ourt has discretion to award [that plaintiff] damages under the statute providing the greatest amount of relief.'" *Gamero*, 272 F. Supp. 3d at 498 (second alteration in original) (internal quotation marks omitted) (quoting *Hengjin Sun v. China 1221, Inc.*, No. 12-CV-7135, 2016 WL 1587242, at *2 (S.D.N.Y. Apr. 19, 2016)).

Plaintiff seeks recovery of unpaid wages for a three-week period in 2024 (April 15, 2024 to May 7, 2024), during which Defendants allegedly failed to pay him any of his salary as a result of his engagement in protected activity. (Compl. ¶ 24; Pl.'s Mem. 3.) Taking Plaintiff's well-pleaded allegations as true, he worked approximately sixty hours per week during this period. (Compl. ¶ 22.) *See Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 88 (E.D.N.Y. 2012) ("As a preliminary matter, when an employer fails to maintain accurate records or where, as here, no records have been produced as a consequence of a defendant's default, courts have held that the 'plaintiff['] s recollection and estimates of hours worked are presumed to be correct.'" (quoting *Liu v. Jen Chu Fashion Corp.*, No. 00-CV-4221, 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004))). Because Defendants paid $0 in wages for these weeks, the Court calculates straight-time damages using the

18

statutory minimum wage applicable in Kings County during 2024 — $16.00 per hour.[8]  NYLL §

652(1-a)(a) (setting NYC minimum wage at $16.00 per hour beginning Jan. 1, 2024).  Applying this

rate, Plaintiff is entitled to $1,920.00 in unpaid straight-time wages [($16.00 per hour × 40 hours per

week) × 3 weeks of unpaid wages = $1,920.00].

Defendants therefore owe Plaintiff a total of $1,920.00 in lost wages on his unpaid wage

claim.

### iv.  Plaintiff sufficiently states a FLSA and NYLL overtime claim

Both the FLSA and the NYLL provide that employees must be "compensated at a rate of no

less than one and one-half times the regular rate of pay for any hours worked in excess of forty

[hours] per week."  *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir.

2013); *see also Agramonte v. Pineridge Commc'ns, Inc.*, No. 23-CV-9029, 2024 WL 5399233, at

*6 (E.D.N.Y. Dec. 20, 2024) (quoting *Nakahata*, 723 F.3d at 200).  Both statutes provide that the

regular rate is either the actual rate at which the employee is paid or the statutory minimum wage,

whichever is higher.  *See* 29 C.F.R. § 778.107; N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2

---

[8]  "Under the NYLL, employees must be paid at least the minimum wage for each hour that
they work."  *Agramonte v. Pineridge Commc'ns, Inc.*, No.23-CV-9029, 2024 WL 5399233, at *6
(E.D.N.Y. Dec. 20, 2024) (citing NYLL § 652).  "Where a non-exempt employee has an agreement
with his or her employer to be paid at a rate greater than the minimum wage, several courts have
found that the failure to pay the promised rate is a violation of NYLL § 191, entitling the employee
to damages under NYLL § 198."  *Dacko v. Emek Renovation Corp.*, No. 24-CV-4018, 2025 WL
3451892 (E.D.N.Y. Sep. 30, 2025) (quoting *Cavalotti v. Daddy's BBQ, Inc.*, No. 15-CV-6469,
2018 WL 5456654, at *13 (E.D.N.Y. Sep. 8, 2018) (collecting cases)), *report and recommendation
adopted as modified*, 2025 WL 3214429 (E.D.N.Y. Nov. 18, 2025).  Plaintiff does not ask for unpaid
wages based on his regular hourly rate, only for unpaid wages based on the minimum wage rate.
(Damages Chart.)  Thus, the Court need not analyze whether Plaintiff is entitled to unpaid wages
under his regular hourly rate and instead uses minimum wage to calculate unpaid straight-time.  *See
McGlone v. Contract Callers Inc.*, 114 F. Supp. 3d 172, 173 (S.D.N.Y. 2015) (applying minimum
wage rate set under NYLL § 652, and not regular hourly rate, to plaintiffs' claim for unpaid regular
hours worked under NYLL § 663(1)); *see also Soto v. Crismeli Deli Grocery Inc.*, No. 19-CV-
10053, 2024 WL 3730115, at *8 (S.D.N.Y. June 28, 2024) (awarding minimum wage to unpaid
wage claims because plaintiff was "entitled to recover the difference between his actual hourly rate [
] and the required minimum rate of pay under state law for the relevant period"), *report and
recommendation adopted*, 2024 WL 3730300 (S.D.N.Y. Aug. 8, 2024).

(providing that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in" the FLSA); *see also Silva v. Legend Upper W. LLC*, No. 16-CV-3552, 2021 WL 4197360, at *10 (S.D.N.Y. Sep. 14, 2021) (calculating the plaintiffs' overtime rate of pay under the FLSA and the NYLL at one and one-half times the minimum wage). Under the NYLL, a "regular rate" is either the employee's hourly pay or, if the employee is paid on "any basis other than hourly rate, the regular hourly wage rate shall be determined by dividing the total hours worked during the week into the employee's total earnings." N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.16; *see, e.g., Pastuizaca v. Mihwa Jo Corp.*, No. 22-CV-5561, 2025 WL 437929, at *6 (E.D.N.Y. Feb. 8, 2025) (computing a non-hourly worker's regular rate by dividing weekly earnings by hours worked), *on reconsideration in part*, 2025 WL 2371048 (E.D.N.Y. Aug. 14, 2025). "Plaintiffs cannot recover unpaid overtime compensation under both statutes for any period of statutory overlap." *Payamps*, 2019 WL 8381264, at *12; *see Gamero*, 272 F. Supp. 3d at 498 (collecting cases); *see also Brathwaite v. Martini Collections Inc.*, No. 22-CV-4929A, 2025 WL 99108, at *3 (S.D.N.Y. Jan. 14, 2025) (recognizing as settled that plaintiffs may recover under either FLSA or NYLL, but not both, for the same period), *report and recommendation adopted*, 2025 WL 448040 (S.D.N.Y. Feb. 10, 2025). Because the overtime wage rate is higher and the statute of limitations longer under the NYLL, the Court assesses Plaintiffs' overtime claims under the NYLL. *See Gamero*, 272 F. Supp. 3d at 498 ("If a plaintiff is entitled to damages under both federal and state wage law, the [c]ourt has discretion to award [that plaintiff] damages under the statute providing the greatest amount of relief." (second alteration in original) (internal quotation marks omitted) (quoting *Hengjin Sun*, 2016 WL 1587242, at *2).

The NYLL overtime provision applies to Plaintiff's employment from February of 2023 until May 7, 2024, when he was working approximately 60 hours per week.[9] (Compl. ¶¶ 21–22; Pl.'s Mem. 3; Damages Chart.) From February 1, 2023 to December 31, 2023, Plaintiff's regular hourly rate is calculated by dividing his weekly salary of $1,000 by 40 hours, resulting in a regular rate of $25.00 per hour.[10] This yields an overtime premium of $37.50 per hour: ($25.00 per hour × 1.5). Plaintiff worked 20 overtime hours per week during this period of 48 weeks, resulting in a total of $36,000.00 in unpaid overtime wages: [($37.50 per hour × 20 hours per week of unpaid overtime) × 48 weeks = $36,000.00].[11]

---

[9] Plaintiff does not make any claims for unpaid wages during the period from approximately February 1, 2023 until April 14, 2024, when he was working 60 hours per week. (Compl. ¶¶ 21–22.) He does make claims for unpaid wages during the period from April 15, 2024 to May 7, 2024, which is addressed *supra* Section 2.B.iii.

[10] Under the FLSA and the NYLL, "[t]here is a rebuttable presumption that an employer's payment of a weekly salary represents compensation for the first 40 hours of an employee's work-week; the burden is on the employer to rebut this presumption with evidence that the employer and employee had an agreement that the employee's weekly compensation would cover a different number of hours." *Chang v. Clean Air Car Serv. & Parking, Corp.*, No. 15-CV-4385, 2024 WL 3218830, at *3 (E.D.N.Y. June 28, 2024) (quoting *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 385 (E.D.N.Y. 2012), *reconsideration denied*, No. 15-CV-4385, 2025 WL 2773015 (E.D.N.Y. Sep. 29, 2025)); *see also Pinovi v. FDD Enterprises, Inc.*, No. 13-CV-2800, 2015 WL 4126872, at *4 (E.D.N.Y. July 8, 2015) ("The FLSA and the NYLL carry a rebuttable presumption that a weekly salary covers only the first forty hours, unless the parties have an alternate agreement."). The Court has no information indicating that the parties had an alternate agreement regarding the number of hours that Plaintiff's weekly salary was intended to cover. Accordingly, the Court assumes that Plaintiff's weekly salary was intended to cover only the first forty hours of his work each week. Thus, to calculate the hourly rate, the Court divides Plaintiff's fixed weekly salary by forty hours, consistent with the FLSA's presumption that a weekly salary covers only the first forty hours of work.

[11] To calculate the amount of unpaid overtime, the Court multiplies the greater of Plaintiff's regular rate or the statutory minimum wage by 1.5, resulting in his overtime premium for the relevant period. The Court then multiplies the overtime premium by the number of overtime hours, *i.e.*, the number of hours worked over forty hours per week, for each week during the relevant period. Finally, the Court multiplies that number by the total number of weeks in the relevant period, resulting in the total amount of unpaid overtime owed for the relevant time period.

From January 1, 2024 to April 14, 2024, Plaintiff's regular hourly rate remained $25.00 per hour, resulting in an overtime premium of $37.50 per hour: ($25.00 per hour × 1.5).  Plaintiff worked 20 overtime hours per week during this period of 15 weeks, resulting in a total of $11,250.00 in unpaid overtime wages: [($37.50 per hour × 20 hours per week of unpaid overtime) × 15 weeks = $11,250.00].

From April 15, 2024 to May 7, 2024 during which the Plaintiff alleges his hours were entirely unpaid, the Court uses the minimum wage for straight-time and 1.5× the minimum wage for overtime, resulting in an overtime premium of $24.00 per hour ($16.00 per hour × 1.5).  Plaintiff worked 20 overtime hours during this period of 3 weeks, resulting in a total of $1,440.00 in unpaid overtime wages: [($24.00 per hour × 20 hours per week of unpaid overtime) × 3 weeks = $1,440.00].

Defendants therefore owe Plaintiff a total of $48,690.00 in lost wages on his overtime wage claim.

### iv.   Plaintiff sufficiently states a WTPA claim

"As of April 9, 2011, an employer must provide an employee with a wage notice within ten business days of the start of employment and then annually every February thereafter." *Carter v. Tuttnaeur U.S.A. Co.*, 78 F. Supp. 3d 564, 569 (E.D.N.Y. 2015) (quoting *Yuquilema v. Manhattan's Hero Corp.*, No. 13-CV-461, 2014 WL 4207106, at *10 (S.D.N.Y. Aug. 20, 2014), *report and recommendation adopted*, 2014 WL 5039428 (S.D.N.Y. Sep. 30, 2014)).  This notice must include, among other things, (1) "the rate or rates of pay and basis thereof"; (2) "whether paid by the hour, shift, day, week, salary, piece, commission, or other"; (3) "the regular pay day designated by the employer"; (4) "the name of the employer"; (5) "any 'doing business as' names used by the employer"; and (6) "such other information as the commissioner deems material and necessary." NYLL § 195(1)(a); *see Lucky Lotto Grocery Deli Corp.*, 2024 WL 3760583, at *13; *see also*

*Mendez*, 564 F. Supp. 3d at 219 (describing the required contents of the wage notice under §
195(1)).  "Under Section 195(3), employers must give their employees accurate wage statements
that include the dates and hours worked, the rate of pay and additional details."  *Ying Ying Dai v.
ABNS NY Inc.*, 490 F. Supp. 3d 645, 660 (E.D.N.Y. 2020); *Sanango v. Ruby Nails Tarrytown, Inc.*,
No. 20-CV-8245, 2023 WL 2707329, at *4–5 (S.D.N.Y. Mar. 30, 2023) (NYLL § 195(3) "requires
that employers provide employees with certain wage statement information 'with every payment of
wages.'" (quoting NYLL § 195(3))).  An employee who is not given these statements may "recover
in a civil action damages of two hundred fifty dollars for each work day that the violations occurred
or continue to occur, but not to exceed a total of five thousand dollars, together with costs and
reasonable attorney's fees."  NYLL § 198(1-d).  "Pursuant to a 2015 amendment to the law,
statutory damages for failure to provide initial hire notices [under NYLL § 195(1)] are $50 per day
up to a maximum recovery of $5,000.00 per employee."  *Ramos v. CJ Contractor Servs., Inc.*, No.
23-CV-274, 2024 WL 3954330, at *5 (S.D.N.Y. Aug. 2, 2024) (citing NYLL § 198(1-b)), *report
and recommendation adopted*, 2024 WL 3952643 (S.D.N.Y. Aug. 27, 2024); *see Salamanca v. ABC
Corp.*, No. 19-CV-1335, 2021 WL 3275902, at *7 (E.D.N.Y. July 15, 2021) ("After February 27,
2015, violations of [NYLL §] 195(1) carry damages of $50 per workday, up to a maximum of
$5,000), *report and recommendation adopted*, 2021 WL 3269089 (E.D.N.Y. July 30, 2021).

The Second Circuit has clarified that a plaintiff seeking statutory damages for WTPA
notice/statement violations in federal court must allege a concrete injury causally linked to the
missing or inaccurate notices.  *See Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 308 (2d Cir.
2024) ("[A] plaintiff must show some causal connection between the lack of accurate notices and
the downstream harm."); *id.* at 305–06 (Article III requires a concrete injury even for statutory
violations); *id.* at 311 ("[w]ithout plausible allegations" of such injury, no standing); *see also Harty
v. W. Point Realty, Inc.*, 28 F.4th 435, 443–444 (2d Cir. 2022) (holding that a bare statutory

23

violation is insufficient for standing and that a plaintiff must allege a concrete, particularized injury beyond the asserted regulatory noncompliance); *Brathwaite,* 2025 WL 99108, at *7 (applying *Guthrie* and dismissing § 195 claims where the "complaint does not allege a concrete downstream consequence of the failure to receive payroll notices or wage statements," and explaining that "confusion and uncertainty about" compensation are "hypothetical, speculative concerns . . . insufficient to establish standing in a suit for damages" (citations and internal quotation marks omitted)).

Federal courts in this Circuit have further underscored that, because "in suits for damages plaintiffs cannot establish Article III standing by relying entirely on a statutory violation," a plaintiff asserting a WTPA claim must show a real injury beyond the employer's noncompliance. *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 64 (2d Cir. 2021). "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief. *Stafford v. Int'l Bus. Machs. Corp.*, 78 F.4th 62, 67 (2d Cir. 2023) (alteration in original); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). "If [a] plaintiff[] lack[s] Article III standing, a court has no subject matter jurisdiction to hear their claim." *Bohnak v. Marsh & McLennan Cos.*, 79 F.4th 276, 283 (2d Cir. 2023) (quoting *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005)).

Plaintiff sufficiently states a claim for violation of the WTPA by alleging that Defendants failed to "[give] a wage notice at the time of hiring or when [Plaintiff's] rates of pay changed that accurately reflected his rate or rates of pay and number of hours worked per week," and "did not keep accurate records of the number of hours Plaintiff worked" each day and each week. (Compl. ¶ 26–27, 31.) *See Duan v. Studio M. Bar & Lounge Inc.*, No. 20-CV-2240, 2024 WL 4250262, at *10

(E.D.N.Y. Jan. 31, 2024) (finding that the plaintiffs "have adequately stated claims for violations of the [WTPA] by the defendants" by alleging that the defendants did not provide wage notices and proper wage statements), *report and recommendation adopted*, Order adopting Report and Recommendation (E.D.N.Y. Feb. 20, 2024); *see also Espinoza v. La Oficina Bar Corp.*, No. 20-CV-1237, 2022 WL 987429, at *15 (E.D.N.Y. Mar. 1, 2022) (holding that plaintiffs adequately stated WTPA claims where they alleged that defendants failed to provide the wage notice required at hiring and failed to furnish proper wage statements with each payment of wages), *report and recommendation adopted as modified*, 2022 WL 985836 (E.D.N.Y. Mar. 31, 2022).

In addition, Plaintiff alleges a concrete downstream injury directly caused by Defendants' failure to provide accurate wage notices and wage statements sufficient to establish Article III standing. Plaintiff asserts in the Complaint that the absence of required notices and statements enabled Defendants to "disguise the actual number of hours Plaintiff worked, and to avoid paying for his full hours worked; and overtime due," and that this failure "continues to result in delayed payment of all proper wages owed to Plaintiff." (Compl. ¶¶ 34, 53.) Plaintiff further details that Defendants' failure to provide required wage notices and wage statements prevented him from "verify[ing] whether he was being properly compensated for his work, including overtime hours," and that proper notices would have allowed him to "identif[y] the underpayments and rais[e] complaints earlier." (Pl.'s Mem. 3.) In addition, Plaintiff alleges that Defendants' noncompliance has "delayed Plaintiff from asserting his rights and necessitated the initiation of this litigation," and that "if Defendants provided Plaintiff with proper wage notices and statements, then Plaintiff would have complained sooner and could have prevented the concrete harm he sustained." (*Id.*) Courts in this Circuit recognize that such allegations satisfy the downstream-harm requirement under *Guthrie*. *See Moran v. John J. Picone, Inc.*, No. 24-CV-4095, 2025 WL 2783596, at *8 (E.D.N.Y. Sep. 30, 2025) (finding concrete injury where inaccurate wage statements "prevented Plaintiff from knowing

to what extent he had been underpaid and seeking payment for the precise amount of his unpaid wages," causing him to be "deprived of his income for longer than he would have been had he been able to timely raise his underpayment earlier," and resulting in the "continued practice of paying Plaintiff less than one and one-half times his regular rate"); *Lata v. Live Constr. Corp.,* No. 24-CV-5981, 2025 WL 2782336, at *9 (E.D.N.Y. Sep. 18, 2025) (holding that plaintiffs adequately alleged a concrete injury where, "as a direct result of defendants' failure to provide these notices and wage statements," they were "unable to identify the employer to remedy the compensation problems" and "unable to determine their hourly rates of pay to see if they were being properly paid under the FLSA and NYLL – which they were not"), *report and recommendation adopted*, 2025 WL 2782495 (E.D.N.Y. Sep. 30, 2025); *see also Tene*, 2025 WL 2731755, at *8 (explaining that, after *Guthrie*, courts find Article III standing where failure to provide wage statements allowed an employer "to hide its violations of wage and hour laws and thus prevent the employee from determining and seeking payment for the precise amount of his unpaid wages," and concluding that plaintiff alleged concrete harm where he suffered a "lack of knowledge about the rates of pay he was receiving and/or should have [been] receiving" and an "inability to identify his hourly rate of pay to ascertain whether he was being properly paid in compliance with the FLSA and NYLL" (alteration in original)).

Thus, the "downstream consequence" of Defendants' failure to provide required wage notices was not that that the Plaintiff was unaware that he was not being paid properly, but that it prevented him from "detect[ing] or challeng[ing] Defendants' concealment of wage violations" and pursuing remedial actions with the Defendants sooner.  (Pl's Mem. 3.)  As a result, Plaintiff sufficiently pleads a "concrete" and "particularized" injury stemming from Defendants' failure to furnish the required wage notices.  *See Isayeva v. Diamond Braces*, No. 22-CV-4575, 2024 WL 1053349, at *17 (S.D.N.Y. Mar. 11, 2024) (finding that plaintiffs had standing to bring NYLL wage

statement claims because they sufficiently alleged injury where defendants' inaccurate "reporting obfuscated the fact of [d]efendants' alleged time-shaving and hindered [p]laintiffs' ability, at the time they were paid, to discover their underpayment and advocate for themselves"); *Lipstein v. 20X Hospitality LLC*, No. 22-CV-4812, 2023 WL 6124048, at \*9 (S.D.N.Y. Sep. 19, 2023) (finding that plaintiff pled injury-in-fact by alleging that not receiving notice and wage statements prevented him from "(i) realizing [his] true hours worked; (ii) realizing that [he was] underpaid; and (iii) taking appropriate action to obtain the payments due to [him]"); *cf. Guthrie v. Rainbow Fencing Inc.*, No. 21-CV-5929, 2023 WL 2206568, at \*4–7 (E.D.N.Y. Feb. 24, 2023) (dismissing NYLL wage statement claim where the "[p]laintiff did not link any injury-in-fact that he personally experienced to [the d]efendants' failure to provide statutory notices under the NYLL"), *aff'd*, 113 F.4th 300 (2d Cir. 2024).

Accordingly, Plaintiff adequately alleges downstream harm sufficient to establish an injury stemming from Defendants' violations of the WTPA.

### v. Defendant owes Plaintiff $104,500.00 in damages under FLSA, NYLL, and WTPA, $6,785.00 in attorneys' fees, and $961.56 in costs

Plaintiff seeks $47,250.00 in unpaid minimum and overtime wages, plus an equal amount in liquidated damages under the FLSA and NYLL, for a total of $94,500.00 in compensatory and liquidated damages.  (Damages Chart.)  In addition, Plaintiff seeks $10,000.00 in statutory damages under the WTPA — consisting of $5,000.00 for Defendants' failure to provide a wage notice and $5,000.00 for failure to provide wage statements.  (*Id.*)  Plaintiff therefore seeks a total of $104,500.00 in damages, exclusive of prejudgment interest.  (*Id.*)

### 1. Actual damages for unpaid minimum wage and overtime claims

As set forth above, Plaintiff is entitled to a total of $50,610 in unpaid minimum and overtime wages, consisting of $1,920.00 in unpaid minimum wages and $48,690.00 in unpaid overtime wages.  However, Plaintiff requests $47,250.00 in actual damages for unpaid minimum and

overtime wages, (*see* Damages Chart), and the Court will award only the amount requested by Plaintiff. *See Pena v. Metro. Wireless Anandpur Inc.*, 21-CV-2239, 2021 WL 5054368, at *3 n.1 (S.D.N.Y. Nov. 1, 2021) (awarding amount requested by the plaintiff even though "[the p]laintiff's request of $1,380.91 appears to underestimate the amount of overtime wages due"); *Trs. of the Sheet Metal Workers' Int'l Ass'n Loc. Union No. 28 Benefit Funds v. Maximum Metal Mfrs, Inc.*, No. 14-CV-2890, 2015 WL 8031380, at *3 (S.D.N.Y. Dec. 7, 2015) (awarding the plaintiff's requested amount); *Leggett & Platt, Inc. v. CM Mattress, LLC*, No. 14-CV-3277, 2015 WL 7281635, at *2 (stating that "[w]here default has been noted, plaintiff's recovery is limited to the amount requested in its [m]otion for [d]efault [j]udgment." (citing Fed. R. Civ. P. 54(c))).

### 2. Liquidated damages

The FLSA provides for the payment of "unpaid overtime compensation" as well as "an additional equal amount as liquidated damages," 29 U.S.C. § 216(b), unless "the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]," 29 U.S.C. § 260. *See also Bi v. Xia*, No. 18-CV-23, 2024 WL 306693, at *3 (D. Conn. Jan. 3, 2024) ("Under the FLSA, successful plaintiffs may collect 'the payment of wages lost and an additional equal amount as liquidated damages.'" (quoting 29 U.S.C. § 216(b))), *aff'd*, No. 24-234, 2025 WL 1733682 (2d Cir. June 23, 2025); *Gortat v. Capala Bros.*, 949 F. Supp. 2d 374, 380 (E.D.N.Y. 2013) ("The FLSA provides for 'the payment of wages lost and an additional equal amount as liquidated damages[.]'" (quoting 29 U.S.C. § 216(b))). The employer bears the burden of proving good faith. *Herman*, 172 F.3d at 142 (citing *Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997)); *Ruiz v. JHDHA, Inc.*, No. 23-CV-7896, 2024 WL 5077665, at *3 (S.D.N.Y. Dec. 11, 2024) ("The employer bears the burden of proving good faith and reasonableness to avoid an award of liquidated damages."); *Gortat*, 949 F. Supp. 2d at 380 ("The

employer bears the burden of proving good faith and reasonableness, but the burden is a difficult one, with double damages being the norm and single damages the exception." (quoting *Herman*, 172 F.3d at 142)). "To establish good faith, the employer must take active steps to ascertain the dictates of the FLSA and then act to comply with them." *Herman*, 172 F.3d at 142; *see also Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d at 125 (awarding liquidated damages where defendants "voluntarily underpaid plaintiffs" and failed to appear). "Similarly, under the NYLL, an employee is entitled to 'liquidated damages equal to one hundred percent of the total amount of wages found to be due,' 'unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law.'" *Hernandez*, 2016 WL 3248493, at *34 (quoting NYLL § 198(1-a)). "[C]ourts have not substantively distinguished the federal standard [under the FLSA] from the current state standard [under the NYLL] of good faith." *Stefanovic v. Old Heidelberg Corp.*, 18-CV-2093, 2022 WL 3928370 at *5 (S.D.N.Y. Aug. 31, 2022) (alterations in original) (quoting *Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 505 (S.D.N.Y. 2015)).

Defendants have failed to appear, respond to the Complaint, or otherwise litigate this action. Because Plaintiff cannot recover under both the FLSA and the NYLL for the same conduct, *see Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018) (noting that the FLSA and the NYLL do not allow "duplicative liquidated damages for the same course of conduct"), and under the NYLL an employee may receive both liquidated damages and prejudgment interest, the Court awards liquidated damages to Plaintiff under the NYLL. *See* NYLL § 198(1-a) (providing that the plaintiff in a wage claim under the NYLL may recover "prejudgment interest . . . and . . . an additional amount as liquidated damages"); *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 265 (2d Cir. 1999) (awarding both liquidated damages and prejudgment interest under the NYLL); *Newman v. W. Bar & Lounge, Inc.*, No. 20-CV-1141, 2021 WL 2401176, at *11 (E.D.N.Y. June 11, 2021) (stating that "where a plaintiff has already received an award of FLSA liquidated damages," the

plaintiff is "entitled to an award of prejudgment interest only on [damages under the NYLL that do not overlap with those under the FLSA] for which liquidated damages pursuant to the FLSA were not assessed" (alteration in original) (quoting *McFarlane v. Harry's Nurses Registry*, No. 17-CV-6350, 2020 WL 7186791, at *4 (E.D.N.Y. Dec. 7, 2020))).

The Court awards Plaintiff liquidated damages for his unpaid minimum wage and overtime pay under the NYLL, equal to "one hundred percent of the total of . . . underpayments found to be due." NYLL § 663(1); *see also Paulino v. S & P Mini Mkt. Corp.*, 791 F. Supp. 3d 457, 468 (S.D.N.Y. 2025) ("The NYLL allows employees to recover 'an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due' unless the employer 'proves a good faith basis to believe that its underpayment of wages was in compliance with the law.'" (citation omitted)); *Jimenez v. Green Olive Inc.*, 744 F. Supp. 3d 221, 254–55 (S.D.N.Y. 2025) (similar); *Soto v. Crismeli Deli Grocery, Inc.*, No. 19-CV-10053, 2024 WL 3730115, at *8 (S.D.N.Y. June 28, 2024) ("The amount of liquidated damages is equal to 100% of the amount owed to the [p]laintiffs in unpaid wages, which includes unpaid minimum wage, unpaid overtime, and unpaid spread-of-hours." (quoting *Villanueva v. 179 Third Ave. Rest. Inc.*, 500 F. Supp. 3d 219, 239 (S.D.N.Y. 2020), *report and recommendation adopted*, 2021 WL 2139441 (S.D.N.Y. May 26, 2021)), *report and recommendation adopted*, 2024 WL 3730300 (S.D.N.Y. Aug. 8, 2024)).

Accordingly, the Court awards Plaintiff $47,250.00 in liquidated damages equal to the amount Plaintiff requested for the amount of unpaid minimum and overtime wages owed to him.

### 3. Statutory damages under the Wage Theft Prevention Act

Under the NYLL, if a wage notice under § 195 is not provided "within ten business days of" the employee's "first day of employment," the employee "may recover in a civil action damages of fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a

total of five thousand dollars**.**"  NYLL § 198(1-b); *see also Ramos*, 2024 WL 3954330, at *5 (quoting NYLL § 198(1-b)); *Salamanca*, 2021 WL 3275902, at *7; *Carter*, 78 F. Supp. 3d at 570 (citing NYLL § 198(1-b)).  "Statutory damages for failure to provide wage statements are $250 dollars 'for each work day that the violations occurred or continue to occur,' not to exceed $5,000." *Ramos*, 2024 WL 3954330, at *5 (quoting NYLL § 198(1-d)); *Duan*, 2024 WL 4250262, at *12 ("After February 27, 2015, violations of [NYLL §] 195(3) carry damages of $250 per workday, up to a maximum of $5,000." (citing NYLL § 198(1-d))).

The Court awards Plaintiff the maximum statutory damages of $5,000 for violations of NYLL § 195(1), and $5,000 for violations of NYLL § 195(3), for a total of $10,000.00 because Plaintiff worked without a wage notice for more than 100 days and without a wage statement for more than 20 days after February 27, 2015.  (Compl. ¶¶ 16, 30–31.)  *See Duan*, 2024 WL 4250262, at *12 (recommending that the plaintiff be awarded $10,000 because the plaintiffs "worked without a wage notice for more than 100 days and without a wage statement for more than 20 days after February 27, 2015); *Rodriguez v. Eden Rose, Corp.*, No. 22-CV-500, 2023 WL 2969311, at *12 (E.D.N.Y. Mar. 3, 2023) (recommending that the plaintiff be awarded $10,000 dollars "[b]ecause [the] plaintiff worked without a wage notice for more than 100 days and without a wage statement for more than 100 days after February 27, 2015"), *report and recommendation adopted*, Order adopting Report and Recommendation (E.D.N.Y. June 21, 2023).

### 4.    Prejudgment interest

Section 198(1-a) of the NYLL allows an employee who prevails in an action on a wage claim to recover "prejudgment interest as required under the civil practices and rules."  *See Rana*, 887 F.3d at 123 (stating that the NYLL liquidated damages provision permits employees to recover "prejudgment interest as required under the civil practice law and rules").  The applicable interest rate is 9% per annum.  *See Ramirez v. Lin*, 830 F. App'x 672, 673 (2d Cir. 2020) (applying a 9%

interest rate to prejudgment interest under the NYLL (citing *Ramirez v. Roka Japanese Food*, No. 18-CV-296, 2019 WL 2372866, at *10 (E.D.N.Y. June 5, 2019))); *Jones v. Pawar Bros. Corp.*, No. 17-CV-3018, 2023 WL 6214213, at * 4 (E.D.N.Y. Sep. 25, 2023) ("The NYLL provides for an award of pre-judgment interest in addition to liquidated damages, calculated at 9% per year." (citations omitted)); *Tarax v. Blossom W. Inc.*, No. 19-CV-6228, 2022 WL 2132749, at *4 (S.D.N.Y. June 14, 2022) ("Pursuant to New York state law, a successful plaintiff may receive prejudgment interest at a rate of nine percent per year." (citation omitted)); *Feuer v. Cornerstone Hotels Corp.*, No. 14-CV-5388, 2020 WL 401787, at *12 (E.D.N.Y. Jan. 24, 2020) (citing N.Y. C.P.L.R. §§ 5001(b), 5004). "Interest shall be computed from the earliest ascertainable date the cause of action existed," or "[w]here such damages were incurred at various times, interest shall be computed upon each such item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b).

Because Defendants failed to pay Plaintiff earned wages over a period of several months, the Court calculates prejudgment interest from a reasonable intermediate date. *See Feuer*, 2020 WL 401787, at *12 n.22 (calculating prejudgment interest on unpaid wages from a date halfway between the first and last days of the employee's employment); *Ying Ying Dai*, 490 F. Supp. 3d at 662 (calculating prejudgment interest on unpaid wages from the midpoint of the first and last date of underpayment); *Santillan v. Henao*, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011) (determining prejudgment interest as the "midway point between when plaintiff[s] began and ceased working for defendant[s]." (alterations in original) (citation and internal quotation marks omitted)). Defendant employed Plaintiff from approximately February 2023 to May 7, 2024. (Compl. ¶ 21.) The Court therefore calculates interest from October 7, 2023, the date halfway between February 1, 2023 and

May 7, 2024.  Plaintiff is entitled to prejudgment interest on his wage claim damages from October 7, 2023 until the date judgment is entered, at a rate of $14.12 per day.[12]

### 5.    Attorneys' fees

Plaintiff seeks an award of $14,620.00 in attorneys' fees and $961.56 in costs, supported by contemporaneous billing records and an itemized chart of disbursements.  (Proposed J.)  The records reflect approximately 36.4 hours of work performed on this case by counsel Sacco & Fillas LLP.  (Pl.'s Mem. 8; Billing Statement.)  Plaintiff's counsel also incurred expenses for the filing fee, process service, legal research, and postage.  (Billing Statement.)

Under both the FLSA and the NYLL, prevailing plaintiffs are entitled to reasonable attorneys' fees and costs.  29 U.S.C. § 216(b); NYLL §§ 198(1), (1-a); *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020).  Trial courts are afforded "considerable discretion in determining what constitutes reasonable attorney's fees in a given case . . .."  *Holick v. Cellular Sales of N.Y., LLC*, 48 F.4th 101, 105 (2d Cir. 2022) (quoting *Barfield*, 537 F.3d at 151); *see also Agudath Isr. of Am. v. Hochul*, No. 22-38, 2023 WL 2637344, at *1 (2d Cir. Mar. 27, 2023) ("We have explained that 'we afford district courts broad discretion in awarding attorneys' fees because they are much closer to the details of each individual case and can better determine what is reasonable and appropriate in the fee calculus for the particular case.'" (quoting *Lilly v. City of New York*, 934 F.3d 222, 234 (2d Cir. 2019))); *Ortiz v. City of New York*, 843 F. App'x 355, 357–58 (2d Cir. 2021) (same); *Pettiford v. City of Yonkers*, 833 F. App'x 893, 895 (2d Cir. 2020) ("We afford a district court considerable discretion in determining what constitutes reasonable attorney's fees in a given case, mindful of the court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." (quoting *Matusick v. Erie County*

---

[12]  The Court calculates prejudgment interest as follows: ([$47,250.00 in unpaid minimum and overtime wages + $10,000.00 in violation of the WTPA (NYLL's wage notice and wage statement law)] × [9% interest /365 days]).

*Water Auth.*, 757 F.3d 31, 64 (2d Cir. 2014))).  In exercising this discretion, trial courts must "bear

in mind *all* of the case-specific variables that . . . courts have identified as relevant to the

reasonableness of attorney's fees in setting a reasonable hourly rate."  *Lilly*, 934 F.3d at 232 (*Arbor*

*Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008));

*see also Ortiz*, 843 F. App'x at 359 (same).  "'[T]he most critical factor' in a district court's

determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success

obtained' by the plaintiff."  *Barfield*, 537 F.3d at 152 (quoting *Farrar v. Hobby*, 506 U.S. 103, 114

(1992)); *Fisher*, 948 F.3d at 606–07 (same).  "Courts look to '[b]oth "the quantity and quality of

relief obtained," as compared to what the plaintiff sought to achieve as evidenced in her

complaint.'"  *Holick*, 48 F.4th at 106 (quoting *Barfield*, 537 F.3d at 152).  Other factors a court

should consider include but are not limited to:

> the complexity and difficulty of the case, the available expertise and
> capacity of the client's other counsel (if any), the resources required to
> prosecute the case effectively (taking account of the resources being
> marshaled on the other side but not endorsing scorched earth tactics),
> the timing demands of the case, whether an attorney might have an
> interest (independent of that of his client) in achieving the ends of the
> litigation or might initiate the representation himself, whether an
> attorney might have initially acted *pro bono* (such that a client might
> be aware that the attorney expected low or non-existent remuneration),
> and other returns (such as reputation, etc.) that an attorney might expect
> from the representation.

*Arbor Hill*, 522 F.3d at 184; *see id.* at 190 (clarifying that district courts should consider, among

others, the factors laid out in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717–19 (5th

Cir. 1974)); *see also, e.g.*, *Lilly*, 934 F.3d at 230 (same).

      Both the Second Circuit and the Supreme Court have held that "the lodestar [method] — the

product of a reasonable hourly rate and the reasonable number of hours required by the case —

creates a 'presumptively reasonable fee.'"  *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir.

2011) (first quoting *Arbor Hill*, 522 F.3d at 183; and then citing *Perdue v. Kenny A. ex rel. Winn*,

559 U.S. 542, 551–53 (2010)); *see also SAC Fund II 0826, LLC v. N.Y.C. Dep't of Fin.*, No. 23-7313, 2024 WL 5153943, at *2 (2d Cir. Dec. 18, 2024) (quoting *Millea*, 658 F. 3d at 166); *Agudath*, 2023 WL 2637344, at *1 ("Courts award attorney's fees according to the 'presumptively reasonable fee' (or 'lodestar') method, calculated as the product of the reasonable number of hours worked and a reasonable hourly rate." (quoting *Arbor Hill*, 522 F.3d at 183–84)); *Grant v. Lockett*, No. 19-469, 2021 WL 5816245, at *7 (2d Cir. Dec. 8, 2021) ("Courts calculate a presumptively reasonable fee under § 1988 by 'determining the appropriate billable hours expended and setting a reasonable hourly rate, taking account of all case-specific variables.'" (quoting *Lilly*, 934 F.3d at 229–30)). The fee applicant bears the burden of "submit[ting] adequate documentation supporting the requested attorneys' fees and costs." *Fisher*, 948 F.3d at 600 (first citing *N.Y. State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983) ("All applications for attorney's fees . . . should normally be disallowed unless accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done."); and then citing *McCann v. Coughlin*, 698 F.2d 112, 131 (2d Cir. 1983) ("Fee awards . . . must be made on the basis of adequate documentation.")); *see also Godinger*, 2024 WL 4145724, at *6 (holding that a prevailing plaintiff must provide detailed billing records specifying hours worked, rates charged, and related costs before the court can assess reasonableness of requested fees, and directing submission of supplemental documentation).

### A.   Reasonable hourly rate

Plaintiff seeks attorneys' fees calculated using hourly rates ranging from $350 to $550 for principal attorneys (Clifford Tucker, Oscar Alvarado, Madeline Howard, and Geoffrey Kalender) and $350 for paralegal staff.  (Pl.'s Mem. 9–11; Billing Statement.)  Plaintiff seeks approval of the following hourly rates for counsel.  Attorney Clifford Tucker bills at both $550 and $350 per hour.  (Billing Statement.)  Attorney Geoffrey Kalender seeks an hourly rate of $550.  (*Id.*)  Attorney

Madeline Howard requests both $550 and $350 per hour, and Attorney Oscar Alvarado seeks an hourly rate of $550. (*Id.*) Paralegal staff request compensation at $350 per hour. (*Id.*)

"The reasonable hourly rate is the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Lilly*, 934 F.3d at 231 (alterations in original) (quoting *Arbor Hill*, 522 F.3d at 190); *see also Agudath*, 2023 WL 2637344, at *2 (same). Such rates should be based on rates "prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." *Cruz v. Loc. Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1159 (2d Cir. 1994) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)); *see also Chaparro v. John Varvatos Enters., Inc.*, No. 21-446, 2021 WL 5121140, at *1 (2d Cir. Nov. 4, 2021) ("[D]etermination of a reasonable hourly rate 'contemplates a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel.'" (quoting *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 59 (2d Cir. 2012))). Determination of the prevailing market rates is "an inquiry that may 'include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district.'" *Chaparro*, 2021 WL 5121140, at *1 (quoting *Townsend*, 679 F.3d at 59). "[T]he 'community' . . . is the district where the district court sits." *Arbor Hill*, 522 F.3d at 190 (citing *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983)).

In what has become known as the "forum rule," courts assess the reasonableness of hourly rates by comparing the rates requested with the prevailing rates charged by attorneys practicing in the district where the court sits. *See Kyros L. P.C. v. World Wrestling Ent., Inc.*, 78 F.4th 532, 547 (2d Cir. 2023) (discussing forum rule (citing *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 172, 175–76 (2d Cir. 2009))); *see also Chaparro*, 2021 WL 5121140, at *1–2 (affirming district court decision on reasonableness of hourly rate in accordance with forum rule). The prevailing rates for

36

experienced attorneys in the Eastern District of New York cases range from approximately $100 to $450, depending on experience level.  *See Konits v. Karahalis*, 409 F. App'x 418, 422–23 (2d Cir. 2011) (noting rates for attorneys in E.D.N.Y. cases ranged from $300–$400 (citing *Konits v. Valley Stream Cent. High Sch. Dist.*, No. 01-CV-6763, 2010 WL 2076949, at *2 (E.D.N.Y. May 19, 2010)); *Cao v. Wedding in Paris LLC*, 727 F. Supp. 3d 239, 299 (E.D.N.Y. 2024) ("Courts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for legal support staff in FLSA cases." (first quoting *Esquivel*, 2023 WL 6338666, at *17; and then quoting *Diaz v. Rene French Cleaners, Inc.*, No. 20-CV-3848, 2022 WL 4646866, at *13 (E.D.N.Y. Aug. 29, 2022), *report and recommendation adopted*, 2022 WL 4662247 (Sep. 30, 2022))); *Shuford v. Cardoza*, No. 17-CV-6349, 2024 WL 865989, at *3 (E.D.N.Y. Feb. 28, 2024) ("Courts in this [D]istrict have generally awarded fees . . . at an hourly rate of $200 to $450 per hour for partners, $200 to $325 for senior associates, and $100 to $200 for junior associates." (citing *Crews v. County of Nassau*, No. 06-CV-2610, 2019 WL 6894469, at *7 (E.D.N.Y. Dec. 18, 2019))).  Although some courts in this District "have recognized slightly higher ranges  . . . of $300–$450 per hour for partners," *Harris v. Best Companion Homecare Servs., Inc.*, No. 18-CV-5328, 2019 WL 4738821, at *8 (E.D.N.Y. Aug. 26, 2019) (collecting cases), *report and recommendation adopted*, 2019 WL 4737056 (E.D.N.Y. Sep. 27, 2019), the cases in which the upper limit of this range has been awarded have involved "attorneys with 20 or more years of experience."  *Small v. N.Y.C. Transit Auth.*, No. 03-CV-2139, 2014 WL 1236619, at *6–7 (E.D.N.Y. Mar. 25, 2014) (collecting cases); *see also Leevson v. Aqualife USA Inc.*, 770 F. App'x 577, 583 (2d Cir. 2019) (noting that district courts have "conclud[ed] that approximately $300 to $450 was a reasonable hourly rate for partners within the Eastern District of New York" (citing *Griffin v. Astro Moving & Storage Co.*, No. 11-CV-1844, 2015 WL 1476415, at *8 (E.D.N.Y. Mar. 31, 2015))); *Abularach v. High Wing Aviation*

37

*LLC*, No. 22-CV-1266, 2025 WL 405986, at *6–7 (E.D.N.Y. Feb. 5, 2025) (applying the forum rule and finding a $450 partner rate reasonable given counsel's experience and prevailing Eastern District market rates); *Santander Consumer USA, Inc. v. Port Auth. of N.Y. & N.J.*, No. 20-CV-1997, 2023 WL 5758995, at *3 (E.D.N.Y. Sep. 6, 2023) ("[T]here is also precedent within this District awarding rates as high as $600 depending upon the experience of the lawyer and complexity of the matter." (citing *Aptive Env't, LLC v. Vill. of E. Rockaway*, No. 19-CV-3365, 2022 WL 5434178, at *4 (E.D.N.Y. July 8, 2022), *report and recommendation adopted*, 2022 WL 4376618 (E.D.N.Y. Sep. 22, 2022))).  In the Eastern District of New York, "senior associates are typically awarded $200 to $325 per hour."  *Ally Fin. Inc. v. Comfort Auto Grp. NY LLC*, No. 20-CV-1281, 2022 WL 3703955, at *18 (E.D.N.Y. Aug. 26, 2022), *report and recommendation adopted*, 2022 WL 4813505 (E.D.N.Y. Oct. 3, 2022); *Shuford*, 2024 WL 865989, at *3.  As for paralegals, courts have concluded that $70 to $100 is "the typical range of awarded hourly rates for legal support staff."  *Sanchez Flores v. El Bukanitas Inc.*, No. 22-CV-6751, 2024 WL 1051161, at *14 (E.D.N.Y. Feb. 14, 2024) (citation omitted), *report and recommendation adopted*, Order adopting Report and Recommendation (E.D.N.Y. Mar. 19, 2024); *Ladino v. Cordova*, 21-CV-2449, 2024 WL 968898, at *6 (E.D.N.Y. Feb. 14, 2024) (same), *report and recommendation adopted*, 2024 WL 967635 (E.D.N.Y. Mar. 6, 2024).

"[T]he fee applicant [has the burden] to produce satisfactory evidence — in addition to the attorney's own affidavits — that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Melo v. Milagro Grocery Corp.*, 750 F. Supp. 3d 38, 61 (E.D.N.Y. 2024) (*quoting Blum*, 465 U.S. at 895 n.11); *see also Farbotko v. Clinton Cnty. of New York*, 433 F.3d 204, 209 (2d Cir. 2005) (explaining that district courts must ground their rate determinations in the evidentiary record rather than relying on assumptions based on the proof submitted).  When the evidentiary

submission does not substantiate the level of experience necessary to support the proposed rates, courts reduce the requested compensation. *Howarth v. FORM BIB LLC,* No. 18-CV-7047, 2020 WL 3441030, at *5 (S.D.N.Y. May 11, 2020) ("Where a moving party 'fails to provide information on the attorneys' and paralegals' backgrounds and experience, courts have used their discretion to award fees at a rate lower than requested.'" (quoting *Malletier v. Artex Creative Int'l Corp.*, 687 F. Supp. 2d 347, 362 (S.D.N.Y. 2010))), *report and recommendation adopted*, 2020 WL 3436685 (E.D.N.Y. June 22, 2020); *Streamlight, Inc. v. Gindi*, No. 18-CV-987, 2019 WL 6733022, at *19 (E.D.N.Y. Oct. 1, 2019) ("[W]hen a party fails to provide information to support the hourly rate of an associate, courts may reduce the hourly rate to the lowest associate rate in the range."), *report and recommendation adopted*, 2019 WL 6726152 (E.D.N.Y. Dec. 11, 2019); *see Hugee v. Kimso Apartments, LLC*, 852 F. Supp. 2d 281, 300–02 (E.D.N.Y. 2012) (finding the submitted declaration, which only "provide[d] some background on his experience in civil rights litigation," stated he had worked "on unspecified matters," and detailed experience at two firms which did not "have a practice in civil rights or housing discrimination litigation," did not demonstrate relevant litigation experience or a background consistent with the senior-level rate sought but that "much closer to a junior associate than the senior partner whose hourly rate he hope[d] to claim," and thus reduced the requested rate to that of a junior associate.)  Courts have also made clear that information such as an attorney's admission date or title does not alone establish entitlement to the higher end of senior-level market rates.  *See UFCW Loc. One Health Care Fund v. Greene Great American, Inc.*, No. 23-CV-1441, 2025 WL 1506163, at *6 n.5 (N.D.N.Y. May 27, 2025) ("Given [the attorney's] 28 years as an attorney, she may be entitled to a greater rate of compensation, but as the record contains no information regarding fields of expertise, reputation, or professional experience, the [c]ourt award[ed] the high end of the associate range."); *Neri v. Abi Japanese Restaurant, Inc.*, No. 20-CV-581, 2022 WL 16755146, at *3 (E.D.N.Y. Sep. 15, 2022) ("[I]n the context of attorney's

39

fees awards, one's title is not the dispositive inquiry; rather, it is one's experience, *i.e.*, skill and expertise, that weighs in favor of awarding a requested hourly rate." (quoting *Lopez v. Ki Moon Restaurant Corp.*, No. 17-CV-6078, 2021 WL 681710, at *3 (E.D.N.Y. Jan. 28, 2021), *report and recommendation adopted*, 2021 WL 681382 (E.D.N.Y. Feb. 22, 2021)), *report and recommendation adopted*, 2022 WL 4596735 (E.D.N.Y. Sep. 30, 2022); *Tjartjalis v. Buera*, No. 14-CV-1412, 2016 WL 4223493, at *2 (E.D.N.Y. Aug. 9, 2016) ("Although [the attorney was] presumably [ ] a partner at the new firm, that title does not, in and of itself, confer him with a higher level of experience warranting a higher hourly rate.").  "The burden is on the party moving for attorney's fees to justify the hourly rates sought."  *Melo*, 750 F. Supp. at 61–62 (quoting *Brown v. Green 317 Madison, LLC*, No. 11-CV-4466, 2014 WL 1237448, at *5 (E.D.N.Y. Feb. 4, 2014), *report and recommendation adopted*, 2014 WL 1237127 (E.D.N.Y. Mar. 25, 2014)) (Although counsel had "been admitted to practice since 1992 and is counsel at the firm," "no other information [was] provided about him," and "the affidavit [did] not provide information as to [the attorney's] experience," the court found "the requested rate excessive" and instead awarded $325 per hour as "appropriate" and "at the high end for senior associates.").

Tucker states that he has "extensive experience managing complex cases at all stages, from intake through trial and appeal," and that he represents clients in "wage and hour, employment, serious injury, and civil rights matters."  (Pl.'s Mem. 9.)  He further contends that attorneys at Sacco & Fillas LLP, including himself, "are billed at $550/hour," which he explains "reflects the rate charged to the firm's defense clients and therefore most accurately represents the market rate for legal services of this type."  (*Id.*).  However, Plaintiff does not specify how long Tucker has practiced wage-and-hour litigation, aside from noting that he graduated from law school in 2013, or provide the kind of concrete, experience-based information required to substantiate a senior-level partner rate.  When the evidentiary submission fails to demonstrate counsel's experience warrants

senior-level compensation, as the applicant bears the burden to connect such experience to the prevailing community rate, courts will reduce the requested rate. *See Melo*, 750 F. Supp. at 61 (holding that the fee applicant must substantiate the requested rate with evidence showing it accords with prevailing community rates); *Hugee,* 852 F. Supp. 2d at 300–02 (reducing counsel's rate where the declaration lacked concrete information demonstrating experience consistent with the level sought). Although Tucker has described his wage-and-hour background in detail in other litigation in the Second Circuit — including his experience litigating such matters since 2013 and his prior associate roles at other firms — none of that information appears in the briefing submitted in this case. *See Miculax v. La Fonda Boricua Lounge, Inc.*, No. 20-CV-4477, 2023 WL 6318625, at *11 (S.D.N.Y. May 4, 2023) (awarding Tucker a rate of $300 considering Tucker's declaration detailed his wage-and-hour experience, including that he had litigated such matters since 2013), *report and recommendation adopted as modified*, 2023 WL 6318770 (S.D.N.Y. Sep. 28, 2023); *De Soto Soto v. Julio H. Baez Lolo Grocery Corp.*, No. 22-CV-700, 2022 WL 18859011, at *7 (E.D.N.Y. Dec. 14, 2022) (approving a rate of $350 where Tucker described his years litigating wage-and-hour cases and his background handling FLSA/NYLL matters), *report and recommendation adopted as modified*, 2023 WL 2731682 (E.D.N.Y. Mar. 31, 2023). Because Tucker omitted comparable information in this case, the Court finds that Plaintiff's briefing does not support the $550 rate requested. Consistent with the evidentiary principles governing fee applications and in line with prior decisions assessing Tucker's demonstrated experience, the Court reduces Tucker's rate to $350 per hour. *Escobar v. Mahopac Food Corp.*, No. 19-CV-510, 2025 WL 934906, at *17 (E.D.N.Y. Mar. 5, 2025) (holding that "although [Tucker] [was an] experienced litigator, plaintiff did not describe the extent of the experience in wage and hour litigation" nor provide further information that would justify the requested rate of $350, $200 per hour was appropriate), *report and recommendation adopted*, 2025 WL 931283 (E.D.N.Y. Mar. 27, 2025); *Miculax*, 2023 WL 6318625,

at *11 (awarding Tucker, an associate at the time, his requested hourly rate of $300); *De Soto Soto*, 2022 WL 18859011, at *7 (awarding requested hourly rate of $350 to Tucker); *see Cao*, 727 F. Supp. 3d  at 299 (awarding hourly rates ranging from $300 to $450 for partners, in FLSA cases); *see also Kim v. Kini LIC Corp.*, --- F. Supp. 3d ---, 2025 WL 2846799, at *25 (E.D.N.Y. Oct. 8, 2025) (reducing an attorney's rate to align with the rate the attorney received from other courts in this district finding "no compelling reason to deviate from the prevailing rates awarded in this district"); *Shen v. ZenTao Inc.*, No. 19-CV-7269, 2025 WL 746478, at *4–5 (E.D.N.Y. Feb. 18, 2025) (reducing attorney rates based on the rates awarded to the same attorney by other courts in the same district), *report and recommendation adopted*, 2025 WL 746063 (E.D.N.Y. Mar. 7, 2025); *Small*, 2014 WL 1236619, at *6–7 (holding that the upper limit of the partner range is reserved for "attorneys with 20 or more years of experience").  The Court does not disturb Tucker's $350 hourly rate for entries billed at that level.

Similarly, Plaintiff also does not provide sufficient individualized information about the remaining "associate" attorneys — Kalender, Howard, and Alvarado — to justify awarding rates at the partner-level range.  Kalender describes himself as a "former associate of Sacco & Fillas LLP [with] . . . experienc[e] [in] employment law . . . representing employees in FLSA and state wage law claims, as well as discrimination and civil rights litigation," and states that he has argued cases "to jury verdict and on appeal in the Second Circuit Court of Appeals," and has secured "multi-million-dollar settlements in collective and class actions."  (Pl.'s Mem. 10.)  He further asserts that his services are valued at "$550/hour, reflecting the market rate charged to defense clients."  (*Id*.)  However, Plaintiff's briefing does not include the type of specific, experience-based information courts generally require justifying partner-level rates — such as his years of practice or the number of wage-and-hour cases he has handled.  Nor does the Court have prior cases on Kalender's

attorney's fees to rely upon.[13]  Since Kalender provides no details regarding the extent, depth, or

nature of his wage-and-hour experience — such as the number of relevant matters handled, the

complexity of those cases, or the specific litigation responsibilities he undertook — the record does

not support the $550 rate requested.  *See Farbotko*, 433 F.3d at 209 (district courts must ground rate

determinations in the evidentiary record rather than assumptions); see also *Hugee*, 852 F. Supp. 2d

at 300–02 (reducing a requested senior-level rate where the declaration reflected only generalized

experience and failed to demonstrate litigation experience consistent with the senior rate sought).

Considering the information provided, and aligning Kalender's compensation with rates awarded to

senior associates in comparable wage-and-hour matters, the Court adopts an hourly rate of $300 —

commensurate with top end of the market rate for senior associates in the Eastern District.

Plaintiff's briefing identifies Howard's seniority level, stating that she is a "former associate

at Sacco & Fillas LLP and now a senior associate at Joseph & Norinsberg LLC" with experience

"handling wage and hour claims, discrimination, and retaliation matters."  (Pl.'s Mem. 10.)  She

further explains that she has "drafted the majority of legal documents, managed discovery, taken

_____

[13]  The Court found only two other cases involving attorney's fees awarded to Kalendar, and both of these cases are distinguishable.  In the first, *Kumar*, the court approved a $385 hourly rate for Kalender in a wage-and-hour class action in which he was one of two attorneys representing the plaintiff.  *See Kumar v. S & A Stores Inc.*, No. 23-CV-887, 2025 WL 1285741, at *3 (S.D.N.Y. May 2, 2025).  In its finding, the court noted that Kalender described himself as "former counsel at Slater, Slater, and Schulman LLP," and was the only attorney whose billing records were submitted, thus the $385 rate was "commensurate with similarly experienced senior attorneys in the field."  *Id.*  In another wage-and-hour class action in which Kalender likewise served as one of two attorneys for the plaintiff, the court in *Rodriguez* evaluated the reasonableness of the total fee award in the context of an FLSA/NYLL settlement, approving a $450 hourly rate for Kalender as part of an attorneys' fee award assessed as a proportion of the plaintiff's total recovery, rather than through an individualized hourly-rate determination.  *Rodriguez v. Caridad Sea Food Rest. Corp.*, No. 21-CV-6849, 2024 WL 5168041, at *2 (S.D.N.Y. Dec. 19, 2024).  Both cases therefore arose in procedurally distinct class-action or settlement contexts in which Kalender was one of a very limited number of plaintiff-side counsel — circumstances that are materially inapplicable to the individualized hourly-rate determination required to justify an award at the top end of the partner range in this case.

and defended depositions, and coordinated large caseloads" in the instant case, and that her hourly

rate of "$550/hour" reflects the market rate for comparable employment litigation services.  (*Id.*)

Although these statements describe the types of tasks she performed, which are reflective of those

types of tasks typically completed by more senior associates, the memorandum of law does not

specify her years of practice or the number of wage-and-hour cases she has litigated to justify

compensation in line with senior-level rates.  *See Small*, 2014 WL 1236619, at *6–7 (noting that the

upper limit of the market range for partners has been awarded to "attorneys with [twenty] or more

years of experience").  Nor does the Court have recent case law to supplement her submission.

Given the limited information Howard provides regarding her actual experience in wage-and-hour

matters, the record does not support the $550 rate requested.  To align her compensation with the

range appropriate to the details she supplied, the Court applies the prevailing rate framework for

junior associates in this District and reduces both her $550 and $350 hourly rates to an hourly rate

of $200.  *See Escobar*, 2025 WL 934906, at *17 (reducing associate rates to $200 where "plaintiff

did not describe the extent of their experience in wage and hour litigation"); *Cao*, 727 F. Supp. 3d at

299 (noting courts in this District have recently awarded hourly rates ranging from $100 to $200 per

hour for junior associates); *Lee v. New Hang Suh, Inc.*, No. 17-CV-9502, 2023 WL 2024805, at *2

(S.D.N.Y. Feb. 15, 2023) (reducing associate's fee to $200 per hour, given the "vague nature of

background information provided"); *Hunter v. City of New York*, No. 12-CV-6139, 2021 WL

4942769, at *5 (E.D.N.Y. Oct. 22, 2021) (finding $200 hourly rate for a junior associate to be

reasonable); *De la Cruz Casarrubias v. Surf Ave Wine & Liquid Inc.*, No. 20-CV-3003, 2021 WL

2227977, at *12 (E.D.N.Y. May 11, 2021) (awarding $200 per hour to associate where plaintiff

failed to provide information on his experience), *report and recommendation adopted*, 2021 WL

2223275 (E.D.N.Y. June 2, 2021).

Plaintiff's briefing states that Alvarado served as an associate at Sacco & Fillas LLP and has experience handling "wage-and-hour claims, discrimination, retaliation, and related litigation," and that he "contributed to research, drafting, and case preparation in employment law matters in federal and state court" while at the firm.  (Pl.'s Mem. 10–11.)  Although these statements describe general categories of work typically assigned to junior associates, the memorandum does not indicate how many years he has practiced, the number of wage-and-hour matters he has handled, or the extent of his independent responsibility.  In light of the limited information regarding Alvarado's experience, the record does not support the $550 rate requested, and the Court adopts an hourly rate of $200 — the high-end of the range for junior associates.  *See Jaramillo v. Latino Regal Corp.*, No. 19-CV-3104, 2024 WL 4648135, at *21 (E.D.N.Y. Sep. 4, 2024) (awarding Alvarado $250 hourly rate in case with a five year period of work leading up to default judgment), *report and recommendation adopted*, Order adopting Report and Recommendation (E.D.N.Y. Sep. 27, 2024); *see also Escobar*, 2025 WL 934906, at *17 (reducing associate rates to $200 where "plaintiff did not describe the extent of their experience in wage and hour litigation"); *Cao*, 727 F. Supp. 3d at 299 (noting courts in this District have recently awarded hourly rates ranging from $100 to $200 per hour for junior associates); *Lee*, 2023 WL 2024805, at *2 (reducing associate's fee to $200 per hour, given the "vague nature of background information provided"); *Hunter*, 2021 WL 4942769, at *5 (finding $200 hourly rate for a junior associate to be reasonable); *De la Cruz Casarrubias*, 2021 WL 2227977, at *12 (awarding $200 per hour to associate where plaintiff failed to provide information on his experience).

With respect to paralegal staff, Plaintiff seeks an hourly rate of $350.  The typical range of awarded rates for legal support staff in this District is $70 to $100 per hour.  *See Sanchez Flores*, 2024 WL 1051161, at *14 ("The typical range of awarded hourly rates for legal support staff is $70 to $100." (citation omitted)).  Although Plaintiff states that $350 is the firm's market rate, Plaintiff

45

provides no information regarding the paralegals' individual qualifications, experience, or level of responsibility.  In view of the lack of individualized information, the Court reduces the paralegals' hourly rate to $100, in line with previous awards recognized in this District.  *See Jaramillo*, 2024 WL 4648135, at *20–21 (reducing paralegal rates from $120 per hour to $85 per hour); *De Soto Soto*, 2022 WL 18859011, at *7 (reducing Sacco & Fillas, LLP paralegal rate from requested $200 per hour to $125 per hour); *see also Rodriguez v. MRC Bakery Corp.*, --- F. Supp. 3d ---, 2025 WL 2748248, at *24 (E.D.N.Y. Sep. 29, 2025) (awarding a rate of $95 per hour of paralegal work); *Camillo v. Khim's Millenium Market, Inc.*, No. 22-CV-7846, 2025 WL 951265, at *16–17 (EDY Mar. 13, 2025) (reducing paralegal hour rate to $100 where "[n]o credentials or background information" were provided for the paralegals), *report and recommendation adopted*, 2025 WL 948125 (Mar. 28, 2025); *Hunter*, 2021 WL 4942769, at *5 (finding $100 hourly rate for paralegals to be reasonable); *Lopez v. PMMT Inc.*, No. 14-CV-2057, 2016 WL 7633264, at *16 (E.D.N.Y. Aug. 25, 2016) (reducing paralegal hourly rate to $100), *report and recommendation adopted*, 2017 WL 7943 (E.D.N.Y. Jan. 3, 2017).

### B.  Hours reasonably expended

In reviewing a fee application, courts may review the expenditure of hours submitted by counsel, and adjust to a reasonable amount, as determined in light of the particulars of the case.  *See Agudath*, 2023 WL 2637344, at *2 ("When reviewing a fee application, a district court should 'examine[ ] the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case,' and if it 'concludes that any expenditure of time was unreasonable, it should exclude these hours' from the fee calculation.'" (alteration in original) (quoting *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997))); *Schutter v. Tarena Int'l, Inc.*, No. 21-CV-3502, 2024 WL 4118465, at *15 (E.D.N.Y. Sep. 9, 2024) ("In determining whether the number of hours worked is reasonable, 'a district court should "examine[] the particular hours

expended by counsel with a view to the value of the work product of the specific expenditures to the

client's case.'"'" (alteration in original) (quoting *Chaparro*, 2021 WL 5121140, at *2)).  To obtain

an award of attorneys' fees, a petitioner must provide contemporaneous time records that support

the date work was performed, the nature of the hours expended, and the work done.  *See Raja v.*

*Burns*, 43 F.4th 80, 86–87 (2d Cir. 2022) (explaining that the party seeking attorneys' fees "must

prepare and submit to the district court contemporaneous time records of the work performed,

specifying the date, the hours expended, and the nature of the work done" (citation and internal

quotation marks omitted)); *Scott v. City of New York*, 643 F.3d 56, 57 (2d. Cir. 2011) ("[A] district

court's 'personal observation' of an attorney's work is not by itself a sufficient basis for permitting

a deviation and awarding fees in the absence of contemporaneous records . . . ."); *Morales v. Fine*

*Design Masonry, Inc.*, No. 22-CV-5817, 2024 WL 4120403, at *3 (E.D.N.Y. June 25, 2024) (noting

that "the party seeking attorney[s'] fees [must] submit sufficient evidence to support the hours

worked and the rates claimed" and "must support its application by providing contemporaneous

time records that detail for each attorney, the date, the hours expended, and the nature of the work

done" (first quoting *Maldonado v. Srour*, No. 13-CV-5856, 2016 WL 5864587, at *1 (E.D.N.Y.

Oct. 6, 2016); and then quoting *Torcivia v. Suffolk Cnty.*, 437 F. Supp. 3d 239, 250-51 (E.D.N.Y.

2020))), *report and recommendation adopted*, 2024 WL 3716032 (E.D.N.Y. Aug. 7, 2024).  Block

billing, "the practice of lumping multiple distinct tasks into a single billing entry — is generally

disfavored because it can complicate the district court's task of determining the reasonableness of

the billed hours."  *Raja*, 43 F.4th at 87 (citing *Restivo v. Hessemann*, 846 F.3d 547, 591 (2d Cir.

2017)); *see Abularach*, 2025 WL 405986, at *7–9 (recognizing that while block billing is

permissible if the court can meaningfully review the hours, courts may reduce total time when

billing includes excessive or administrative work).  However, "the practice is by no means

prohibited in this Circuit because block billing will not always result in inadequate documentation

47

of an attorney's hours" and is "permissible as long as the district court is still able 'to conduct a meaningful review of the hours' for which counsel seeks reimbursement." *Id.* (quoting *Restivo*, 846 F.3d at 591). "In determining the first component of the lodestar — the number of hours reasonably expended — the district court may exclude hours that are 'excessive, redundant, or otherwise unnecessary.'" *H.C. v. N.Y.C. Dep't of Educ.*, 71 F.4th 120, 126 (2d Cir. 2023) (quoting *Raja*, 43 F.4th at 87), *cert. denied*, 144 S. Ct. 490 (2023). "[T]he district court also 'has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application.'" *Id.* at 126 (quoting *Raja*, 43 F.4th at 87).

Plaintiff has provided sufficiently detailed contemporaneous billing records documenting the work performed in this matter, including the dates that the services were performed, the amount of time during which services were provided, and a brief description of each task performed. (Billing Statement.) The records reflect approximately 36.4 total hours of attorney and paralegal time, of which 23.7 hours are paralegal time and 12.7 are attorney time, including client intake and communications, drafting and revising the complaint, preparing and sending demand letters, researching relevant entities, and preparing and filing the motion for default judgment. (*Id.*) Courts in this district have approved fees where the attorneys and paralegals have billed similar number of hours in FLSA and NYLL default cases. *See, e.g.*, *Lata*, 2025 WL 2782336, at *19 (finding 24.2 hours of attorney time and 12 hours of paralegal time to be reasonable in an FLSA and NYLL default judgment case); *Garzon v. Building Services Inc.*, No. 24-CV-5429, 2025 WL 1871171, at *20 (E.D.N.Y. July 2, 2025) (finding 18.5 hours of attorney work to be reasonable and "comparable to time approved as reasonable by courts in this Circuit for work on a default judgment"), *report and recommendation adopted*, 2025 WL 2062741 (E.D.N.Y. July 23, 2025); *Melo*, 750 F. Supp. 3d at 62 (finding 27.48 hours of attorney work to be reasonable); *Du v. CGS Metal Fabrication Inc.*, No. 19-CV-1821, 2022 WL 987316, at *13 (E.D.N.Y. Jan. 14, 2022) (finding 27.6 hours of associate

time and 3.5 hours of paralegal time reasonable), *report and recommendation adopted*, Order adopting Report and Recommendation (E.D.N.Y. Jan. 31, 2022).

### C. Lodestar calculation

The lodestar is "calculated as the product of the reasonable number of hours worked and a reasonable hourly rate." *Agudath*, 2023 WL 2637344, at *1 (citing *Arbor Hill*, 522 F.3d at 183–84). The Court calculates the lodestar for each timekeeper by multiplying the number of hours reasonably expended by the applicable reasonable hourly rate. As discussed above, the Court reduces Tucker's hourly rates from $550 to $350, while leaving intact his $350 hourly rate for entries billed at that level. For Kalender, the Court reduces his requested $550 hourly rate to $300, consistent with the reasonable range for senior associates experienced in wage-and-hour litigation in this District. For Howard and Alvarado, the Court reduces their requested $550 hourly rate to $200, consistent with the reasonable range for junior associates in wage-and-hour litigation in this District. The Court also reduces the paralegal hourly rate to $100.

Accordingly, the Court calculates the lodestar for Tucker by multiplying his hours billed at the reduced $350 rate (4.6 hours), resulting in a total award of $1,610.00 in fees ([4.6 × $350 = $1,610.00]). Similarly, the Court calculates the lodestar for Kalender by multiplying his 0.5 hours by the reduced hourly rate of $250, resulting in a total award of $125.00 ([0.5 × $250 = $125.00]). For Howard, the Court multiplies her hours billed at the reduced $200 hourly rate (0.9 hours), resulting in a total award of $180.00 ([0.9 × $200 = $180.00]). For Alvarado, the Court multiplies his hours billed at the reduced $200 hourly rate (6.7 hours), resulting in an award of $670.00 ([6.7 × $200 = $1340.00]). Lastly, the Court calculates the lodestar for the paralegal support by multiplying the total hours (23.7) by the applicable reasonable hourly rate of $100, resulting in an award of $1,659.00 ([23.7 × $100 = $2,370.00]). Thus, Defendants owe Plaintiff a total of $5,625.00 in attorneys' fees.

### 6.   Costs

Plaintiff seeks $961.56 in costs, consisting of the court filing fee, process server fee, research expenses, clerical charges, and postage.  (Pl.'s Mem. 8; Billing Statement 11.) Specifically, Plaintiff's disbursements include a $405.00 court filing fee, $470.10 process server fee, $16.37 research fee, $49.00 clerical fee, and $21.09 postage.  (Billing Statement 11.)

"An award of costs 'normally include[s] those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients.'"  *Fisher*, 948 F.3d at 600 (alteration in original) (quoting *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)).  As with attorneys' fees, "[t]he fee applicant must submit adequate documentation supporting the requested . . . costs."  *Id*.

The Court finds that Plaintiffs' requested costs are reasonable and supported by adequate documentation.  Because Plaintiffs' request for costs covers only "reasonable out-of-pocket expenses . . . which are normally charged fee-paying clients," are of the type of expenses typically incurred by an attorney, and because these costs are supported by adequate documentation, the Court grants Plaintiffs' request for costs in the amount of $961.56.  *Id.* (quoting *Reichman*, 818 F.2d at 283).

## III.  Conclusion

For the foregoing reasons, the Court directs the Clerk of Court to enter default judgment against Defendants pursuant to Rule 55(a) of the Federal Rules of Civil Procedure.  The Court grants Plaintiff's motion for unpaid minimum wages, unpaid overtime, and WTPA claims.  The Court awards Plaintiff damages in the total amount of $104,500.00, consisting of: (1) $47,250.00 in unpaid wages for violations of the unpaid wage and overtime provisions of the NYLL; (2) $47,250.00 in liquidated damages, and (3) $10,000.00 in statutory damages under the WTPA. Prejudgment interest shall be added to this amount, to be calculated at a rate of $14.12 per day from

October 7, 2023, the midway point between the start and end of Plaintiff's employment, until the date judgment is entered.  If any amount of the judgment remains unpaid within ninety days after judgment or after the time to appeal has expired if no appeal is pending, Plaintiffs' damages under the NYLL will be increased by fifteen percent in accordance with NYLL § 198(4).[14]  In addition, the Court awards Plaintiff $5,625.00 in attorneys' fees and $961.56 in costs.  Judgment shall enter accordingly.

Dated:  January 23, 2026
        Brooklyn, New York

SO ORDERED:


    s/ MKB
MARGO K. BRODIE
United States District Judge

---

[14]  NYLL § 198(4) states that "[a]ny judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent."  NYLL § 198(4); *see also Leo v. Province Therapeutics, LLC*, No. 23-CV-05418, 2024 WL 2923945, at *6 (E.D.N.Y. May 21, 2024), *report and recommendation adopted*, 2024 WL 2891798 (E.D.N.Y. June 10, 2024).  The increase applies only to Plaintiffs' damages awarded under the NYLL.  *Lopez v. Martha's Cocina Mexicana, LLC*, No. 23-CV-2053, 2023 WL 9603828, at *16 n.13 (E.D.N.Y. Dec. 27, 2023) ("The increase applies only to damages awarded under state law.").  The Court grants Plaintiff's request for such additional statutory damages.  (Pl.'s Mem. 8.)